## OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Appropriation of money, Invalid enactment of statute. *General Court. Governor. Words*, "Appropriation bill," "Final action," "Enact."

A bill directing distribution of a portion of the highway fund in the State treasury to the several cities and towns for expenditure during the current year for local highway purposes only was not a distribution

bill such as those described in G. L. (Ter. Ed.) c. 58, §§ 18–25; c. 70, §§ 1–7, but was an appropriation bill within art. 63 of the Amendments to the Constitution.

Enactment by the General Court of a special appropriation bill before approval by the Governor of a general appropriation bill enacted on the same day was invalid under art. 63 of the Amendments to the Constitution.

Upon return by the Governor to the House of Representatives, after he had signed a general appropriation bill, of a special appropriation bill whose enactment by the House and the Senate had been invalid under art. 63 of the Amendments to the Constitution because it preceded final action on the general appropriation bill, the Governor stating that he did not approve the bill for that reason, the bill was before the House subject to its rules as though there had been no attempt to enact it, and the House and the Senate might then proceed under their rules to enact it and lay it before the Governor.

On June 1, 1938, the House of Representatives adopted the following order:

WHEREAS, The General Appropriation Bill for the current year (House, No. 1800, now chapter 356 of the acts of the current year) was passed to be enacted by the House of Representatives on May 19, 1938, and by the Senate on the same day, and on the same day was laid before His Excellency the Governor, and was signed by him on May 25, 1938; and

WHEREAS, House, No. 2026, entitled "An Act providing for the Distribution by the Commonwealth to its Municipalities of a Sum of Money from the Highway Fund", a copy of which is herewith submitted, was passed to be enacted by the House of Representatives on May 19, 1938 (the Speaker, on May 17, 1938, having ruled upon a point of order that it was not an appropriation bill), and was passed to be enacted by the Senate on the same day, all as shown by the journals of the respective bodies, and was laid before the Governor on May 23, 1938; and

WHEREAS, Said bill, House, No. 2026, was returned by the Governor to the House of Representatives on May 26, 1938, with a message accompanied by an opinion of the Attorney General, requested by the Governor on May 23, 1938, and rendered on May 25, 1938, prior to the signing by the Governor of said General Appropria-

tion Bill, both said message and said opinion being printed in House, No. 2068, a copy of which is herewith submitted, said bill, House, No. 2026, together with said accompanying message, now being pending for disposition before the House of Representatives; and

WHEREAS, His Excellency the Governor, in his message accompanying said bill, House, No. 2026, expressed no objections to the passage thereof, but only the conclusion of law that the action of the General Court with relation thereto was premature in point of time, because taken prior to final action on the General Appropriation Bill; and

WHEREAS, Grave questions of constitutional law arise as to whether said bill, House, No. 2026, has become a law or whether further action is required to be taken by the General Court under the Constitution and, if action is so required, as to the nature thereof; accordingly, be it

ORDERED, That the House of Representatives require the Opinion of the Honorable the Justices of the Supreme Judicial Court on the following important questions of law:

1. Is said bill, House, No. 2026, which distributes money from the Highway Fund to the several cities and towns of the Commonwealth for expenditure under the direction of their respective highway departments for local highway purposes, a distribution bill, falling within the same category as distributions made under sections eighteen to twenty-five, inclusive, of chapter fifty-eight of the General Laws and under sections one to seven, inclusive, of chapter seventy of the General Laws, and therefore not subject to Article LXIII of the Amendments to the Constitution of the Commonwealth?

2. Is said bill, House, No. 2026, an appropriation bill, within the meaning of sections three and four of said Article LXIII?

3. Was said bill, House, No. 2026, enacted prior to final action on House, No. 1800, within the meaning of said Article LXIII?

4. Does the return of said bill, House, No. 2026, by His Excellency the Governor, accompanied by the message contained in House, No. 2068, constitute a return of said

bill with his written objections to the passage thereof, within the meaning of Article II of Section I of Chapter I of Part the Second of the Constitution of the Commonwealth, or a return with a notification that House, No. 2026 was not properly passed to be enacted?

5. May the House of Representatives proceed at once to enact said bill, House, No. 2026, or transmit said bill to the Senate for enactment in that branch?

6. Has said bill, House, No. 2026, become law?

7. What procedure in regard to said bill, House, No. 2026, is available to the General Court under the Constitution following the return of said bill with the message of His Excellency the Governor contained in House, No. 2068?

The bill referred to in the foregoing order read as follows:

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, as follows:

There shall be paid, without appropriation, from the Highway Fund as soon as may be to the several cities and towns for expenditure during the current year under the direction of their respective highway departments for local highway purposes only, including construction, reconstruction, maintenance and repair of local roads, streets and highways other than state highways, surface drainage, sidewalks, curbings and bridges, the installation or improvement of traffic control and snow removal, the sum of eight million dollars, in proportion to the amounts for which they will be respectively assessed for the state tax of the current year.

The whole or any portion of the sum paid under this section to any city or town which is not expended during the current year for the purposes hereinbefore set forth shall be included by the assessors thereof as an estimated receipt and deducted from the amount required to be raised by taxation to meet its appropriations to be made in the year nineteen hundred and thirty-nine or thereafter for highway purposes.

On June 2, 1938, the order was transmitted to the Justices, who, on June 10, 1938, returned the following answers:

To The Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in the order adopted by the House of Representatives on June 1, 1938, a copy of which is hereto annexed.

The questions relate to a bill (House, No. 2026, amended) — a copy of which is annexed to the order — which is entitled "An Act providing for the distribution by the commonwealth to its municipalities of a sum of money from the highway fund," and which provides that "There shall be paid, without appropriation, from the Highway Fund as soon as may be to the several cities and towns for expenditure during the current year under the direction of their respective highway departments for local highway purposes only . . . the sum of eight million dollars, in proportion to the amounts for which they will be respectively assessed for the state tax of the current year."

It appears from the order that this bill was passed to be enacted by the House of Representatives and by the Senate on May 19, 1938, was laid before the Governor on May 23, 1938, and was returned by the Governor to the House of Representatives on May 26, 1938, accompanied by a message, a copy of which is annexed to the order. It appears also that the general appropriation bill for the current year (House, No. 1800, now St. 1938, c. 356) was passed to be enacted by the House of Representatives and by the Senate on May 19, 1938, was laid before the Governor on the same day and was signed by him on May 25, 1938. The message of the Governor recites that House Bill No. 2026 is returned without his approval and states, in substance, as the reasons therefor, that the bill is an appropriation bill, that it was enacted before final action on the general appropriation bill, and that consequently it was enacted contrary to the provisions of art. 63 of the Amendments to the Constitution of the Commonwealth and therefore is invalid.

The questions relate to the power of the House of Representatives in these circumstances to act on the bill (House, No. 2026), and it appears to be important for the House to know the legal effect of such circumstances in their bearing upon its power to act thereon. *Opinion of the Justices,* 294 Mass. 616, 618.

The fundamental question involved in the specific questions propounded is whether the bill (House, No. 2026) is an "appropriation bill" within the meaning of said art. 63 of the Amendments. Significant parts of this article are these: "Section 1. *Collection of Revenue.* — All money received on account of the commonwealth from any source whatsoever shall be paid into the treasury thereof. Section 2. *The Budget.* — Within three weeks after the convening of the general court the governor shall recommend to the general court a budget which shall contain a statement of all proposed expenditures of the commonwealth for the fiscal year, including those already authorized by law . . . Section 3. *The General Appropriation Bill.* — All appropriations based upon the budget to be paid from taxes or revenues shall be incorporated in a single bill which shall be called the general appropriation bill. . . . The general court may provide for its salaries, mileage, and expenses and for necessary expenditures in anticipation of appropriations, but before final action on the general appropriation bill it shall not enact any other appropriation bill except on recommendation of the governor. . . . Section 4. *Special Appropriation Bills.* — After final action on the general appropriation bill or on recommendation of the governor, special appropriation bills may be enacted."

Obviously this bill is not "the general appropriation bill" but, if an "appropriation bill," is a "special" appropriation bill not expressly excluded from the application of said art. 63. The bill cannot be interpreted merely as an authorization of future appropriations. Compare *Steward Machine Co. v. Davis,* 301 U. S. 548, 577. Such an interpretation is precluded by the express provision that "There shall be paid, without appropriation," the sum of money referred to in the bill. The bill purports to constitute in itself

action effective to authorize the payment of such money. If such authorization is in itself an appropriation the bill is an appropriation bill even though the word "appropriate" is not used therein and the word "distribution" is used in the title. See *Opinion of the Justices*, 297 Mass. 577.

We are of opinion that the authorization of payment of money which the bill purports to make is an appropriation of such money. It was said in *Opinion of the Justices*, 297 Mass. 577, 580, after referring to art. 63 of the Amendments, that "All money belonging to the Commonwealth must be paid into the treasury. No money can be paid out of the treasury except under the provisions of the budget which require both executive and legislative sanction." Legislative and executive sanction for such payments must, at least ordinarily, be given by statutes making appropriations therefor.

The extent to which appropriations may be made by permanent statutes continuing in force from year to year need not be considered. The bill (House, No. 2026) clearly does not purport to be such a continuing statute but provides for payment to the several cities and towns for the current fiscal year only. In this respect the bill differs from the statutes considered in *Dane* v. *Treasurer & Receiver General*, 237 Mass. 50, and *Knights* v. *Treasurer & Receiver General*, 237 Mass. 493, and the statutes referred to in the first question submitted.

The payment of money which the bill (House, No. 2026) purports to authorize is to be made from the Highway Fund. Under existing law this fund consists of money "credited on the books of the commonwealth" to such fund. This money includes fees received "under the laws of the commonwealth relating to the use and operation of motor vehicles and trailers," "contributions and assessments . . . by cities, towns or counties for maintaining, repairing and constructing ways," and receipts, under G. L. (Ter. Ed.) c. 64A, as amended, which imposes an excise tax upon sales of gasoline and other "fuel" used in propelling motor vehicles, together with "refunds and rebates made on account of expenditures' on ways by the

department of public works." Except as to such "refunds and rebates" it is expressly provided that the money shall be paid "into the treasury of the commonwealth," otherwise described as "the state treasury." It is further provided that "said Highway Fund, subject to appropriation, shall be used" for specified purposes which are direct expenditures by the Commonwealth or one of its departments. G. L. (Ter. Ed.) c. 90, § 34, as amended by St. 1933, c. 197, and St. 1934, c. 364. G. L. (Ter. Ed.) c. 64A, particularly § 13. See also G. L. (Ter. Ed.) c. 81, § 26, as amended by St. 1934, c. 366.

It is clear that under existing law money now constituting the Highway Fund is in the treasury of the Commonwealth, and money hereafter to be derived from the designated sources is to be paid into the treasury. This fund is not owned by any corporate body apart from the Commonwealth, as in the situations considered in *Opinion of the Justices*, 261 Mass. 523, 550, *Opinion of the Justices*, 261 Mass. 556, 602, and *Horton* v. *Attorney General*, 269 Mass. 503, 511–512. Nor are the amounts which comprise the fund, though "credited on the books of the commonwealth" to the Highway Fund, charged at the time of collection with a trust which can be carried out without compliance with the provisions of said art. 63 of the Amendments, as in the situation considered in *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 289–290. See *Dane* v. *Treasurer & Receiver General*, 237 Mass. 50, 52. On neither of these grounds is art. 63 of the Amendments inapplicable.

The money now included in the Highway Fund clearly is "money received on account of the commonwealth," within the meaning of said art. 63, and not on account of the cities and towns. Under existing law also such money hereafter paid will be money so received. See *Opinion of the Justices*, 297 Mass. 577, 580. The bill (House, No. 2026) does not distinguish between amounts already received and those which are to be received later, but purports to authorize payment from the Highway Fund as a unit. It purports to change the existing law only by pro-

viding for a payment from that fund for a purpose not included within the purposes to which, under existing law, it is to be devoted. The bill, unlike the statutes relating to the income tax considered in *Dane* v. *Treasurer & Receiver General*, 237 Mass. 50, 52–53, and *Knights* v. *Treasurer & Receiver General*, 237 Mass. 493, 496, does not provide for payment to the cities and towns of money received by the Commonwealth under statutes establishing a comprehensive system of taxation, whereby taxes are collected primarily for the benefit of the cities and towns and, as an integral part of such system, distributed among them. See *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 48–52. We need not consider to what extent the decided cases rest upon this principle or whether this principle alone is sufficient to exclude a statute from the application of art. 63 of the Amendments. The principle is not applicable to money in the treasury of the Commonwealth credited to the Highway Fund. Such money was not originally received, expressly or impliedly, for the benefit of cities and towns.

It was pointed out in *Dane* v. *Treasurer & Receiver General*, 237 Mass. 50, 52–53, that "Provision is made by St. 1919, c. 314 [see now G. L. (Ter. Ed.) c. 58, § 18, as amended], for distribution of taxes collected by the Commonwealth to its subordinate governmental agencies, which themselves appropriate the tax money thus received for specific public uses within the limits of their authority." To what extent and in what circumstances this principle may render art. 63 of the Amendments inapplicable to a statute providing for a payment of money from the treasury of the Commonwealth need not be considered at large. This principle, however, is inapplicable to the bill (House, No. 2026). This bill does not authorize the payment of money to cities and towns to become a part of their general revenue subject to appropriation by them. See G. L. (Ter. Ed.) c. 40, §§ 1, 5. In this respect the bill differs substantially from the statutes considered in *Dane* v. *Treasurer & Receiver General*, 237 Mass. 50, and in *Knights* v. *Treasurer & Receiver General*, 237 Mass. 493, and from the statutes referred to in the first question submitted, —

even from G. L. (Ter. Ed.) c. 70, §§ 1–7. The bill (House, No. 2026) directs that the money paid to the several cities and towns thereunder shall be expended for specific purposes only, "local highway purposes," described therein with particularity, and "under the direction of their respective highway departments." Statutory authorization of expenditures by highway departments of cities and towns for "local highway purposes" of money in the State treasury, "received on account of the commonwealth," partakes of the nature of an appropriation of such money rather than of a delegation to the respective cities and towns of the power to make appropriations thereof. Though cities and towns bear a somewhat different relation to the Commonwealth than do its own departments, they are subordinate governmental agencies. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50–51. No sound distinction can be drawn with reference to the effect of art. 63 of the Amendments upon a bill authorizing the expenditure of money in the State treasury, "received on account of the commonwealth," by highway departments of the cities and towns and a bill — which clearly would be an appropriation bill — authorizing like expenditures by the department of public works. See G. L. (Ter. Ed.) c. 81, § 26, as amended; c. 90, § 34, as amended.

It is suggested in the first question submitted that the bill (House, No. 2026) may be "a distribution bill, falling within the same category as distributions made under sections eighteen to twenty-five, inclusive, of chapter fifty-eight of the General Laws and under sections one to seven, inclusive, of chapter seventy of the General Laws." The words "distribution bill" do not occur in art. 63 of the Amendments and we do not attempt to define them. Nor are we required to express any opinion with respect to the statutes referred to. The cases of *Dane* v. *Treasurer & Receiver General*, 237 Mass. 50, and *Knights* v. *Treasurer & Receiver General*, 237 Mass. 493, so far as they relate to these statutes, are authoritative. The statutes, however, considered in these cases, as already pointed out, differ in material respects from the bill (House, No. 2026). Con-

sidering the nature of the bill as a whole and the differences between it and the statutes involved in the decided cases, without relying exclusively upon any one of these differences, we conclude that the bill is not a "distribution bill" in any sense which would exclude it from the requirements of art. 63 of the Amendments applicable to special appropriation bills.

For the reasons already given we answer the first question "No," with the limitations stated, and the second question "Yes."

The words "final action" as used in art. 63, §§ 3, 4, of the Amendments refer to the final step in the process by which a bill becomes a law. That process includes both legislative and executive action. The final step in this process — unless the bill is returned by the Governor to the Senate or House of Representatives in which it originated, with his objections thereto, or he fails to return it within five days after it was laid before him — is approval of the bill by the Governor. Constitution, Part II, c. 1, § 1, art. 2. But the words "enact" and "enacted" as used in art. 63, §§ 3, 4, of the Amendments refer solely to legislative action. Compare Constitution, Part II, c. 6, art. 8; art. 56 of the Amendments to the Constitution. Final action on the general appropriation bill for the current year was taken when this bill (House, No. 1800) was signed by the Governor on May 25, 1938. Prior to that time neither the Senate nor the House of Representatives had power under the Constitution to enact the special appropriation bill (House, No. 2026). The action of the House and that of the Senate in passing this bill to be enacted on May 19, 1938, were, in form, enactments of the bill prior to final action on the general appropriation bill and, because of the constitutional prohibition, were without effect. We answer the third question "Yes."

It is unnecessary to consider whether the return of the bill (House, No. 2026) by the Governor to the House of Representatives with the accompanying message would have constituted a return of such bill with his written objections, satisfying the requirements of the Constitution, if

such bill had been enacted in conformity with constitutional requirements. Since it was not so enacted the Governor was not required to deal with it either by approving it or by returning it with his written objections. In these circumstances his act in returning the bill is to be interpreted, in the language of the fourth question, as "a return with a notification that House, No. 2026 was not properly passed to be enacted." We so answer the fourth question.

We find nothing in the Constitution or statutes prohibiting either branch of the General Court from taking action which is preliminary to enactment on a special appropriation bill prior to "final action" on the general appropriation bill. It is only enactment by either branch of the General Court prior to such "final action" which is prohibited. The bill is now before the House, subject to its rules, in the position in which the bill stood before the invalid action of the House and of the Senate in passing it to be enacted. The House may now proceed, unless precluded by its rules, to enact the bill, in the same manner as if invalid action to that end had not been taken previously, and, if it is so enacted, to transmit the bill to the Senate for like action — the bill, if enacted by both branches of the General Court, being subject to the constitutional provision requiring that it be "laid before the governor for his revisal," (see Constitution, Part II, c. 1, § 1, art. 2), as in the case of any bill duly enacted by both branches of the General Court. We so answer the fifth question.

We answer the sixth question "No."

The subject matter of the seventh question is dealt with in the answer to the fifth question and no further answer is required.

The Chief Justice has been unable to take part in the preparation of this opinion.

> FRED T. FIELD.
> CHARLES H. DONAHUE.
> HENRY T. LUMMUS.
> STANLEY E. QUA.
> ARTHUR W. DOLAN.
> LOUIS S. COX.