# SUPPLEMENT

OPINION OF THE JUSTICES TO THE HOUSE
OF REPRESENTATIVES.

*Constitutional Law*, Fiscal year, Appropriation of money. *Commonwealth*,
Fiscal year. *Words*, "Year," "Fiscal year."

Section 2 of art. 72 of the Amendments to the Constitution does not pre-
vent the change by statute of the fiscal year of the Commonwealth so
that it will begin on the July 1 immediately following the assembling
of the General Court in regular biennial session instead of on the De-
cember 1 immediately preceding such assembly.
Section 2 of art. 72 of the Amendments to the Constitution does not re-
strict the power of the General Court to change the fiscal year nor regu-
late the time of enactment of the general appropriation bill except as
it is contemplated that such a bill shall be acted upon in the political
year in which the General Court assembles in regular session.
It would be constitutionally competent for the General Court to enact a
bill containing provisions in substance making such changes in the
fiscal year and providing that, in doing so, "budgets may be sub-
mitted and appropriations made for such transitory period or periods
as may seem necessary or advisable."

On January 9, 1941, the House of Representatives adopted
the following order, which was transmitted to the Justices
on January 21, 1941:

WHEREAS, Section two of Article LXIII of the amend-
ments to the Constitution of the Commonwealth, which
was approved at the state election in nineteen hundred
and eighteen, provides in part that "Within three weeks
after the convening of the general court the governor shall
recommend to the general court a budget which shall
contain a statement of all proposed expenditures of the
commonwealth for the fiscal year" . . .; and
WHEREAS, Section three of said Article LXIII provides
in part that "All appropriations based upon the budget
to be paid from taxes or revenues shall be incorporated
in a single bill which shall be called the general appropria-
tion bill"; and

WHEREAS, Article LXXII of said amendments, which was approved at the state election in nineteen hundred and thirty-eight, provides as follows:

"*Section 1.* The general court shall assemble in regular session on the first Wednesday of January in the year following the approval of this article and biennially on said Wednesday thereafter. Nothing herein contained shall prevent the general court from assembling at such other times as they shall judge necessary or when called together by the governor.

*Section 2.* The budget required by Section 2 of Article LXIII of the amendments to the constitution shall be for the year in which the same is adopted and for the ensuing year.

*Section 3.* All provisions of this constitution and of the amendments thereto requiring the general court to meet annually are hereby annulled."; and

WHEREAS, At the time of the approval of said Article LXIII, and also at the time of the approval of said Article LXXII, the fiscal year of the commonwealth was, and now is, established by Clause Ninth of section seven of chapter four of the General Laws, as beginning on December first and ending with the following November thirtieth; and

WHEREAS, Said Article LXXII resulted directly from a proposal for a constitutional amendment introduced in the general court of 1935–1936 by initiative petition (House Document No. 305 of 1935), after an identical proposal for a constitutional amendment introduced in the general court of 1933–1934 by initiative petition (House Document No. 225 of 1934) had been defeated; and

WHEREAS, The description of said proposed constitutional amendment introduced in the general court of 1933–1934, determined by the attorney general under Article XLVIII of the amendments to the Constitution of the Commonwealth, was printed, as required by said Article, at the top of the blanks provided by the state secretary for signatures of subsequent signers of the initiative petition for said amendment, and the description of said proposed

constitutional amendment introduced in the general court of 1935–1936, likewise determined by the attorney general and likewise appearing at the top of blanks for signatures of subsequent signers of the initiative petition for said last mentioned amendment, also appeared, as required by said Article, on the ballots used for submitting said constitutional amendment to the voters at the state election in 1938, at which election it was approved by said voters and became Article LXXII of the Amendments to the Constitution of the Commonwealth, and said descriptions were identical and read as follows: —

"This amendment annuls all existing provisions of the Constitution and its prior amendments which require annual sessions of the General Court, commonly known as the Legislature, and provides for biennial sessions in their place. It also provides that the budget of all proposed expenditures of the Commonwealth shall be so prepared as to cover two fiscal years instead of only one as at present required"; and

Whereas, No suggestion that said proposed constitutional amendments in any way restricted the power of the general court to change the fiscal year of the commonwealth or regulated the time of enactment of the general appropriation bill appeared in their aforesaid descriptions, in their titles or in the reports of legislative committees considering them, and no such suggestion appeared in the pamphlet containing information relative to such proposed amendment introduced in the general court of 1935–1936, copies of which pamphlet, under said Article XLVIII, were sent to all registered voters in the commonwealth prior to the state election of 1938; and

Whereas, If said Article LXXII is to be construed as restricting the power of the general court to change the fiscal year of the commonwealth or as regulating the time of enactment of the general appropriation bill, it would seem that

(1) The additional signers of the initiative petition for said article of amendment were not correctly informed as to its meaning by the description in the petition,

(2) The committee of the general court which considered and reported on said article did not have in mind any such restriction or regulation,

(3) The description of said article as it appeared in the petition and on the ballot did not conform to the constitutional requirements for such descriptions,

(4) Said article was submitted to the registered voters for approval in an improper and unconstitutional manner, and

(5) Said voters, when voting on said article, had not been correctly informed as to its meaning either by the pamphlet hereinbefore mentioned or by the description appearing on the ballot; and

WHEREAS, It would appear to have been necessary to provide in a constitutional amendment establishing regular biennial sessions of the general court in place of regular annual sessions that the budget and general appropriation bill should be for two consecutive fiscal years instead of for one fiscal year, as stated in the description hereinbefore quoted, but not necessary to provide therein any restriction on the power of the general court to change the fiscal year of the commonwealth or any regulation of the time of enactment of the general appropriation bill, inasmuch as such a restriction or regulation would seem to bear no relation to the change in frequency of sessions of the general court; and

WHEREAS, His Excellency the Governor has recommended in his inaugural address, (current Senate document No. 1, on pages 31 and 32) that the fiscal year of the commonwealth be changed so as to begin on July first of the year of the assembling of the general court in regular biennial session and end on the following June thirtieth, which is the fiscal year of the United States and a number of the states thereof; and

WHEREAS, There is now pending before the general court a bill, (current House Document No. 645) designed to change the fiscal year of the commonwealth as recommended by His Excellency the Governor, to provide that the biennial budget and biennial general appropriation

bill shall be for the two fiscal years beginning with July first following the assembling of the general court in regular biennial session, and also to provide for an interim budget and an interim appropriation bill for such period or periods as may seem necessary or desirable to effect such change; and

WHEREAS, Doubt exists as to the constitutional power of the general court to enact legislation to carry into effect the aforesaid recommendations of His Excellency the Governor in the form of the aforesaid bill or otherwise, accordingly, be it

ORDERED, That the House of Representatives require the opinions of the Honorable the Justices of the Supreme Judicial Court on the following important questions of law:

(1) Does section two of said Article LXXII prevent the change by statute of the fiscal year of the commonwealth so that it will begin July first immediately following the assembling of the general court in regular biennial session instead of December first immediately preceding such assembling?

(2) In what respect, if any, does section two of said Article LXXII restrict the power of the general court to change the fiscal year of the commonwealth or regulate the time of enactment of the general appropriation bill?

(3) Is it constitutionally competent, in view of section two of said Article LXXII, for the general court to enact into law said bill, House Document No. 645?

Accompanying the order were copies of several documents referred to therein.

On February 7, 1941, the Justices returned the following answers, which were read in the House on February 10:

To The Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House of Representatives on January 9,

1941, and transmitted to the Justices on January 21, 1941, a copy of which is hereto annexed.

The questions relate to a bill now pending in the General Court (House, No. 645), which is entitled: "An Act changing the fiscal year of the commonwealth and establishing the fiscal biennium thereof." Copies of the bill and other legislative documents relating to the questions submitted accompany the order. The bill, if enacted, will by § 1 thereof substitute a new provision for G. L. c. 4, § 7, Ninth, as appearing in the Tercentenary Edition, by § 2 thereof repeal a part of G. L. c. 29, § 1, so appearing, as amended by St. 1939, c. 502, § 1, and by § 3 thereof make other provisions incidental to the change in the fiscal year. G. L. c. 4, § 7, Ninth, as appearing in the Tercentenary Edition, is as follows: "'Fiscal year', when used with reference to the commonwealth or any of its offices, departments, boards, commissions or institutions, shall mean the year beginning with December first and ending with the following November thirtieth, both inclusive." The part of G. L. c. 29, § 1, so appearing, as amended, that is to be repealed is as follows: "The word 'biennium', as used in this chapter, shall, unless the context otherwise requires, mean a period of two consecutive fiscal years beginning December first in an even-numbered year." The bill, by § 1 thereof, substitutes for these provisions the following as G. L. c. 4, § 7, Ninth: "'Fiscal year', when used with reference to the commonwealth or any of its offices, departments, boards, commissions or institutions, shall mean the year beginning with July first and ending with the following June thirtieth, both inclusive. 'Fiscal biennium', when so used, shall mean the period of two consecutive fiscal years beginning with July first following the assembling of the general court at its regular biennial session" — according to art. 72 of the Amendments to the Constitution of the Commonwealth, on the first Wednesday in January in an odd-numbered year. Section 3 of the bill provides that "Notwithstanding the provisions of section one, in effecting the change from the present fiscal year to the new fiscal year established by this act, budgets may be submitted and

appropriations made for such transitory period or periods as may seem necessary or advisable."

The fundamental change to be made by the bill, therefore, is a change of the "fiscal year" of the Commonwealth from a year beginning December 1 and ending the following November 30, both inclusive (and of the corresponding "fiscal biennium"), to a "fiscal year" beginning July 1, and ending the following June 30, both inclusive (and to the corresponding "fiscal biennium"). The bill contains no provision as to the time this change is to take effect, but recognizes that the change will result in some transitory period or periods for which provision should be made by budgets and appropriations. It is not wholly clear from the bill when any such transitory period is to occur. The bill is hardly to be construed retroactively so that the now current' "fiscal year" and the corresponding "fiscal biennium" shall begin on July 1, 1940, with the result that the period from July 1, 1940, to November 30, 1940, both inclusive, shall be included in two fiscal years and in two biennia. It is perhaps conceivable, as a matter of statutory construction, irrespective of the question of constitutional validity, either (a) that the transitory period for which provision is to be made, according to the bill, will be the period of seven months from December 1, 1940, to June 30, 1941, both inclusive, so that the next fiscal year and fiscal biennium will begin, according to the bill, on July 1, 1941, or (b) that the current fiscal biennium, according to the present statute, will continue until November 30, 1942, there will be a transition period of seven months from December 1, 1942, to June 30, 1943, both inclusive, to be provided for and the succeeding fiscal year, and fiscal biennium, according to the bill, will begin on July 1, 1943.

The Justices are not authorized or required to state general principles of law (see *Answer of the Justices*, 217 Mass. 607; 299 Mass. 617), or to interpret the pending bill, except so far as is required in answering the questions submitted. Obviously, however, the first alternative interpretation above set forth cannot be given effect in its entirety. The specific reference in the Constitution to

the "fiscal year" is in the requirement that the Governor, within three weeks after the convening of the General Court, shall recommend to it a budget of the proposed expenditures of the Commonwealth and the means of defraying them for the fiscal year. Art. 63, § 2, of the Amendments. Since this time has expired he cannot now be required by retroactive legislation to recommend a budget for a changed fiscal year as a basis for the general appropriation bill. We express no opinion whether the ultimate result of the first alternative interpretation can be accomplished under the Constitution, but, in view of the objection to this interpretation which is inapplicable to the second alternative interpretation, and in the absence of any clear indication in the bill that a partial application thereof is intended, we deal with the questions submitted on the basis of the second alternative interpretation.

The questions submitted relate to the constitutionality of the bill if enacted. They arise primarily, if not exclusively, by reason of the provision of § 2 of art. 72 of the Amendments to the Constitution of the Commonwealth, adopted at the State election in 1938. That article, after providing in § 1 that "The general court shall assemble in regular session on the first Wednesday of January in the year following the approval of this article and biennially on said Wednesday thereafter," provides in § 2 that "The budget required by Section 2 of Article LXIII of the amendments to the constitution shall be for the year in which the same is adopted and for the ensuing year." By § 3 all "provisions of this constitution and of the amendments thereto requiring the general court to meet annually are hereby annulled."

Article 72 of the Amendments, however, must be considered in connection with other constitutional provisions, but particularly with art. 63 of the Amendments approved by the Constitutional Convention in 1918, and adopted at the State election in that year.

Said art. 63 contains the following provisions: "Section 2. *The Budget.* — Within three weeks after the convening of the general court the governor shall recommend

to the general court a budget which shall contain a statement of all proposed expenditures of the commonwealth for the fiscal year, including those already authorized by law, and of all taxes, revenues, loans and other means by which such expenditures shall be defrayed. . . . Section 3. *The General Appropriation Bill.* — All appropriations based upon the budget to be paid from taxes or revenues shall be incorporated in a single bill which shall be called the general appropriation bill. The general court may increase, decrease, add or omit items in the budget. The general court may provide for its salaries, mileage, and expenses and for necessary expenditures in anticipation of appropriations, but before. final action on the general appropriation bill it shall not enact any other appropriation bill except on recommendation of the governor. The governor may at any time recommend to the general court supplementary budgets which shall be subject to the same procedure as the original budget. Section 4. *Special Appropriation Bills.* — After final action on the general appropriation bill or on recommendation of the governor, special appropriation bills may be enacted. Such bills shall provide the specific means for defraying the appropriations therein contained. Section 5. *Submission to the Governor.* — The governor may disapprove or reduce items or parts of items in any bill appropriating money. . . ."

The phrase "fiscal year" occurs nowhere in the Constitution or in the Amendments thereto except in art. 63, § 2, of the Amendments. Nowhere in the Constitution or in the Amendments thereto is the phrase expressly defined. The use of the word "fiscal," however, imports some relation to financial operations. Indeed, this Amendment shows that the period referred to thereby is a period for which a budget — upon which the general appropriation bill is to be based — is to be recommended by the Governor, showing the proposed expenditures of the Commonwealth for such period and the means by which such expenditures are to be defrayed. The time of the beginning of the period and the time of its expiration are fixed by the Amendment only so far as can be implied from the use of

the phrase "fiscal year." But the use of the word "year" naturally imports a period of twelve months, though the phrase "fiscal year" has been used to describe a shorter period. See, for example, St. 1912, c. 445, § 1, by which it was provided that the "fiscal year" of certain institutions for which appropriations shall be made and the treasurers thereof shall make their reports "shall, for the year nineteen hundred and thirteen begin on January first, and continue until July first, nineteen hundred and fourteen; and thereafter the said year shall begin on the first day of July and shall continue until the first day of July of the succeeding year." The word "year," except as modified by its context, ordinarily means the calendar year. It is provided by statute that, in construing statutes, the word shall mean a calendar year unless a contrary intention is clearly shown. G. L. (Ter. Ed.) c. 4, § 7, Nineteenth. Obviously it is so used in art. 72, § 1, of the Amendments, whereby it is provided that the "general court shall assemble in regular session on the first Wednesday of January in the year following the approval of this article." Sometimes in the Constitution the word "year" is used to describe a period of substantially, though not exactly, twelve months, beginning at a fixed date, as in art. 10 of the Amendments — an Amendment in large part superseded by art. 64 of the Amendments, providing for biennial elections, and art. 72 of the Amendments, providing for biennial sessions — whereby it is provided that the "political year shall begin on the first Wednesday of January instead of the last Wednesday of May," that the General Court shall assemble every year on said first Wednesday of January, and that certain other provisions in the Constitution "that have reference to the last Wednesday of May, as the commencement of the political year, shall be so far altered as to have like reference to the first Wednesday of January." Compare Amendment 17. See *Opinion of the Justices*, 239 Mass. 603, 606. Undoubtedly the use of the word "fiscal" in the phrase "fiscal year" negatives a requirement that the budget to be recommended by the Governor shall relate to proposed expenditures and the

means of defraying them for the calendar year or the
political year. <sup>a</sup>

The general principles applicable to the interpretation of
a constitutional amendment are applicable to the interpre-
tation of the phrase "fiscal year" in the context in which the
phrase is used.   These principles were stated in *General
Outdoor Advertising Co. Inc.* v. *Department of Public Works*,
289 Mass. 149, 158.   It was there said, with citation of sup-
porting cases, that an amendment "is to be construed in
the light of the circumstances under which it was framed,
the causes leading to its adoption, the imperfections hoped
to be remedied, and the ends designed to be accomplished.
. . . Its words are to be given their natural and obvious
sense according to common and approved usage at the time
of its adoption. . . . It is permissible to examine the pro-
ceedings of the convention by which the amendment was
proposed in order to understand the attendant conditions
and the attitude of the members, although not for the pur-
pose of controlling the plain meaning of the language."
See also *Loring* v. *Young*, 239 Mass. 349, 368, 372–373;
*Opinion of the Justices*, 243 Mass. 605, 607; *Yont* v. *Secre-
tary of the Commonwealth*, 275 Mass. 365, 366–367.

At the time art. 63 of the Amendments was approved by
the Constitutional Convention, at the time it was adopted
by the people and since that time, the statute defining the
phrase "fiscal year" has been G. L. c. 4, § 7, Ninth, already
quoted, and thereunder the "fiscal year" is the period from
December 1 to the following November 30, both inclusive.
This definition originated in St. 1905, c. 211, § 1, which
provided that the "fiscal year of all offices, departments,
boards, commissions, hospitals, asylums, charitable, penal
and reformatory institutions of the Commonwealth shall
begin with the first day of December and end with the
following thirtieth day of November, and all books and ac-
counts therein shall be kept by fiscal years as herein estab-
lished," fixed the time for making annual reports, and pro-
vided that the "financial statements now required by law
to be included therein shall be made for the fiscal year as
herein established."   Before the passage of this Act the

statutes did not use the phrase "fiscal year," but for many years the statutes had fixed the period to be included in the annual reports required by law to be made by officers and boards and had provided that officers and boards should submit estimates of amounts required for expenditures. See St. 1857, c. 40; St. 1858, c. 158; Gen. Sts. c. 4, § 1; c. 15, § 28; Pub. Sts. c. 4, § 5; c. 16, § 26; R. L. c. 6, § 26; c. 9, § 5. By R. L. c. 9, § 5, it was provided that annual reports required by law "shall, unless otherwise provided, include the year ending on the thirtieth day of September." By R. L. c. 6, § 26, it was provided that officers or boards shall annually submit estimates "showing the amounts appropriated for the current year and the amounts required for the ensuing year." And by R. L. c. 6, § 31, it was provided: "If an appropriation or a portion thereof is not expended within the political year in which it is made or within the succeeding year, it, or the unapplied balance thereof, shall revert to the general treasury and shall not afterward be paid out except upon a new appropriation. An unexpended balance of an appropriation for a specific year may be applied in the succeeding year to the purpose for which the appropriation was made." Thus several different periods of time were referred to.

Statute 1905, c. 211, brought the several periods into harmony by creating a "fiscal year," amending various statutory provisions accordingly, particularly R. L. c. 6, § 31, which was amended by § 7 so as to read: "If an appropriation or a portion thereof is not expended within the fiscal year in which it is made or within the succeeding fiscal year, it, or the unapplied balance thereof, shall revert to the general treasury and shall not afterward be paid out except upon a new appropriation. An unexpended balance of an appropriation for a specific year may be applied in the succeeding fiscal year to the purpose for which the appropriation was made," and providing in § 12 that "Appropriations of the general court for the year nineteen hundred and six shall be made for the eleven months from the first day of January to the thirtieth day of November, inclusive. Appropriations made by the general court thereafter shall

be made for the fiscal year beginning on the first day of the preceding December and ending on the thirtieth day of the succeeding November, both inclusive." The provisions of St. 1905, c. 211, with changes not pertaining to the questions now under consideration, were in general embodied in G. L. c. 4, § 7, Ninth; c. 29, §§ 3, 10, 12; c. 30, § 32. And G. L. c. 29 contained a provision (§ 6) somewhat similar to that later embodied in art. 63 of the Amendments providing that the Governor shall submit a budget to the General Court — a provision that originated in St. 1910, c. 220.

It is apparent that the statutory situation above described was one of the circumstances in the light of which art. 63 of the Amendments was framed. Indeed, the proceedings of the Constitutional Convention disclose that this statutory situation was considered by the convention. The original draft of the Amendment provided for a budget of proposed expenditures and the means of defraying them for the "ensuing year," and the phrase "fiscal year" was substituted for this phrase by reason of the fact that the statutory fiscal year began December 1 prior to the assembling of the General Court on the first Wednesday of January. See Debates, Massachusetts Constitutional Convention (1917–1918) Vol. 3, pages 1141, 1142–1143, 1144, 1148, 1158, 1174. The conclusion follows inevitably that art. 63 of the Amendments refers to a fiscal year established by statute.

We are, however, of opinion that, though art. 63 of the Amendments refers to a fiscal year established by statute, it did not incorporate in the Amendments the fiscal year previously established by statute, so as to fix the period so established as the fiscal year as a constitutional fiscal year beyond the possibility of statutory change. The language of the Amendment requires no such interpretation. And the proceedings of the Constitutional Convention show no such intention. So important a matter would hardly have been passed over in silence. And a "provision of the Constitution commonly is to be interpreted as stating a broad and general principle of government, regulative of all conditions arising in the future and falling within its terms." *Opinion of the Justices*, 261 Mass. 523, 543–544. See also *Opinion of the*

*Justices,* 297 Mass. 577, 580. An intention to restrict legislative action is not lightly to be implied when not shown by the language used in the Constitution or an amendment thereto. The phrase "fiscal year" is not to be "interpreted in any narrow or constricted sense." See *Opinion of the Justices,* 297 Mass. 577, 580.

It is necessary to consider, however, whether the provisions relating to appropriations in art. 63 of the Amendments or any other constitutional provision in force prior to the adoption of art. 72 of the Amendments — later considered — precludes a change in the fiscal year after the Governor has recommended a budget in accordance with the requirement of said art. 63. A statute fixing a fiscal year is not an appropriation. Except as the provisions of such a statute are incorporated in said art. 63 to the extent already stated, these provisions are merely declaratory of legislative policy binding upon officers and boards but not requiring the General Court to make appropriations in conformity therewith. The "power to appropriate money of the Commonwealth is a legislative power. Under the Constitution it can be exercised only by the General Court and in the particular manner prescribed." *Opinion of the Justices,* 302 Mass. 605, 612. A "statute of this nature cannot tie the hands of the General Court so as to prevent it from enacting a statute dealing with the appropriation of public funds. It is of no higher authority than the appropriation bill if and when enacted." *Opinion of the Justices,* 294 Mass. 616, 622. See also *Opinion of the Justices,* 300 Mass. 630, 636–637; 302 Mass. 605, 610–611.

There is no constitutional prohibition against appropriating money to meet expenditures incurred prior to the making of the appropriation. *Lowell* v. *Oliver,* 8 Allen, 247, 257. *Opinion of the Justices,* 302 Mass. 605, 613. The statutes herein referred to indicate that such has been the practice. Indeed, the language of art. 63 of the Amendments — as clearly was understood by the convention that approved it — recognizes that the general appropriation bill therein referred to cannot be finally acted upon until several weeks after the General Court has assembled, and that under the

existing statute fixing the fiscal year such bill will include appropriations for a period before its passage. On the other hand, there is no restriction in the Constitution upon the appropriation of money to provide for expenditures to be made in the future even beyond the current calendar, political or fiscal year. It is not necessary to consider the extent to which appropriations may be made by permanent statutes continuing in force from year to year. *Opinion of the Justices,* 300 Mass. 630, 636. The longest period in the future for which appropriations would be made to carry out the provisions of the bill now under consideration would not, in our opinion, bring the bill into conflict with general constitutional limitations — though, of course, in accordance with the principle that the General Court, subject to exceptions not here material, cannot bind its successors (*Opinion of the Justices,* 302 Mass. 605, 610–611), an appropriation bill passed by the present General Court, so far as it had not been carried out, could be repealed by a succeeding General Court.

Moreover, though art. 63 of the Amendments restricts the General Court in making appropriations before final action on the general appropriation bill, this article permits the General Court to enact special appropriation bills after final action on the general appropriation bill or upon recommendation by the Governor. And the "governor may at any time recommend to the general court supplementary budgets which shall be subject to the same procedure as the original budget." §§ 3, 4. See *Opinion of the Justices,* 300 Mass. 630, 640. Irrespective of whether appropriations for a transitory period beyond the period included in the budget upon which the general appropriation bill is to be based may be added to the general appropriation bill by amendment (see, however, *Opinion of the Justices,* 294 Mass. 616, 621–622), we are of opinion that the General Court is not precluded from making appropriations for the period beyond that covered by the original budget, upon supplementary budgets recommended by the Governor or by special appropriation bills. There is, therefore, nothing in this article of the Amendments relating to appropriations that prevents

a change in the fiscal year and, after the adoption of art. 72 of the Amendments providing for biennial sessions, a corresponding change in the fiscal biennium, even though there remains a period from December 1 to the following June 30, both inclusive, to be provided for outside the budget upon which the general appropriation bill is based.

Article 72 of the Amendments was designed to provide for biennial sessions of the General Court. This result was accomplished by so providing affirmatively in § 1 of the Amendment and, as a corollary, by annulling, by § 3 thereof, all inconsistent provisions of the Constitution and its Amendments. The only specific adjustment of constitutional requirements apart from these general provisions was made by § 2 of the Amendment with respect to the "budget required by Section 2 of Article LXIII of the amendments to the constitution." Such budget thereafter was to be "for the year in which the same is adopted and for the ensuing year." Before the adoption of art. 72 of the Amendments a budget was required in each political year (see art. 10 of the Amendments), or each calendar year that varies only slightly from the political year. The Governor was required to recommend a budget to the General Court within three weeks after it assembled in each such year. See art. 63, § 2, of the Amendments. It was contemplated that this was the year in which the budget, or rather the general appropriation bill based thereon, should be adopted or otherwise finally acted upon. The budget recommended by the Governor in each such year was the budget for that year in the sense that it was the budget to be adopted in that year. This is true though the budget to be adopted in a political or calendar year would contain a statement of proposed expenditures and the means of defraying them for a fiscal year not necessarily coterminous with the political or calendar year. Since, however, as a result of the change from annual to biennial regular sessions, there would be a regular session of the General Court in only one of two political or calendar years, there would be no regular session in the second of those years to which, under art. 63 of the Amendments, a

budget could be recommended. The budget which previously the Governor was required to recommend for adoption in the second of those years, therefore, by art. 72, § 2, of the Amendments was to be recommended for adoption in the first of those years together with the budget for the first of those years. The phrase "the year in which the same is adopted" more naturally relates to the year in which the General Court meets in regular session and considers the budget recommended by the Governor — the political or calendar year — than to the year for which the expenditures included in the budget are to be made and the means of defraying them are to be provided — the fiscal year. And the "ensuing year" naturally means the next political or calendar year, a year in which the General Court will not assemble in regular session and, consequently, cannot receive a budget recommended by the Governor as required by art. 63 of the Amendments. Had it been intended that the budget referred to should be for the "fiscal year," that is, the year for which appropriations were to be made and for the ensuing fiscal year, the word "fiscal" would naturally have been used to describe the years referred to. While the budget "for" a year suggests a budget of the proposed expenditures for that year and the means of defraying them, the failure to use the word "fiscal" to define that year and the reference to "the year in which the same is adopted" lead us to the opinion that the year meant is the political or calendar year in which the budget is to be adopted, rather than the fiscal year for which appropriations are to be made. We conclude, therefore, that art. 72, § 2, of the Amendments does not require that a budget be adopted within a fiscal year for which appropriations based thereon are made. In other words, the section does not prevent the General Court from establishing by statute a fiscal year that shall begin after the budget of proposed expenditures and the means of defraying them has been adopted by the passage of the general appropriation bill.

It follows from what has been said that there is ample power in the General Court to make appropriations to pro-

vide for the transitory period between the termination of the present fiscal biennium on November 30, 1942, and the beginning of the new fiscal biennium on July 1, 1943, upon a supplementary budget recommended by the Governor or by special appropriation bills, conforming to the requirements of art. 63 of the Amendments. In view of this conclusion it is unnecessary, in answering the questions submitted, to express an opinion whether the same result may be accomplished by amendment of the general appropriation bill so as to extend its application to and including June 30, 1943.

In our opinion the questions submitted, based upon the bill as we have interpreted it, must be answered as follows:

We answer the first question "No."

We answer the second question: Section 2 of said art. 72 does not restrict the power of the General Court to change the fiscal year of the Commonwealth or regulate the time of enactment of the general appropriation bill except as it is contemplated that the general appropriation bill based upon the budget shall be acted upon in the political year in which the General Court assembles in regular session.

We answer the third question "Yes."

> FRED T. FIELD.
> CHARLES H. DONAHUE.
> HENRY T. LUMMUS.
> STANLEY E. QUA.
> ARTHUR W. DOLAN.
> LOUIS S. COX.
> JAMES J. RONAN.