OPINION OF THE JUSTICES TO THE SENATE AND THE HOUSE
OF REPRESENTATIVES.

*Constitutional Law*, Workmen's compensation, Initiative, Police power,
Due process of law, Trial by jury, Opinions of the Justices.   *Words*,
"Defence."

Provisions of a certain law, proposed by initiative petition under art. 48
of the Amendments to the Constitution and providing for a State
fund for the payment of workmen's compensation to be adminis-
tered by certain public officers, were interpreted by the justices as
not creating a corporation either of a private or *quasi* public charac-
ter, but as creating an instrumentality of the Commonwealth; and,
in the opinion of all the justices excepting Cox, J., not to make a
"specific appropriation of money from the treasury of the Common-
wealth," a matter excluded from being submitted under the Initiative.

Certain variations from exact accuracy in a nine page description by the
Attorney General of a law proposed by initiative petition under
art. 48 of the Amendments to the Constitution did not, in the opinion
of the justices, require the conclusion that the description fell so far
short of stating the main characteristics of the law as to invalidate
the petition.

Interpreting a certain law, proposed by initiative petition, as establishing,
to be operated by public officers as a governmental instrumentality, a
State fund for the payment of workmen's compensation, the justices
were of opinion that the law would be constitutional as an exercise of
the police power, and would not involve the expenditure of public
money for other than a public purpose.

A provision of a certain law, proposed by initiative petition and creating
a State fund for the payment of workmen's compensation, depriving
a noninsuring employer, in an action against him at common law, of
the "defence," beyond those already taken from him under § 66 of
the present law, that "the employee's injury was not a direct result
of any negligence on the part of the employer," would create a cause
of action in an employee sustaining an injury "in the course of his
employment" that would be a "direct result" of such employment
though not a "direct result of any negligence on the part of the
employer" and would be constitutional under the police power.

A certain law, proposed by initiative petition as an amendment to the
present workmen's compensation act by the establishment of a State
fund for the payment of workmen's compensation, would not be un-
constitutional as depriving the employer of a right to trial by jury.

Provisions of a certain law, proposed by initiative petition and creating
a State fund for the payment of workmen's compensation, that pro-
hibited self insurance or insurance with any insurer other than the
State fund, with immaterial exceptions, since the fund was to be ad-
ministered as an instrumentality of the government, were not un-

constitutional as an unwarranted exercise of the police power, or as depriving insurance companies or employers of property without due process of law, or as depriving employers of their present freedom of choice among insurers.

The justices declined to answer a question whether, if any provisions of a proposed law were unconstitutional, such provisions were "separable so that the other provisions thereof are not affected by such unconstitutionality."

On March 6, 1941, the House of Representatives, and on March 12, the Senate in concurrence, adopted the following order which was transmitted to the Justices on March 17, respecting a measure purporting to be proposed by initiative and described in the answers of the Justices:

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the General Court on the following important questions of law:

1. Does said "description" (as it appears in said document, House, No. 2034, and in said blank) as a whole, and in all respects, meet the requirements of said Article XLVIII, in view of the following considerations, among others:

(a) That it states erroneously in its first paragraph that under said proposed law the state insurance fund would not be empowered to insure an employer against liability on account of personal injury, occupational disease or death of domestic servants or farm laborers employed by him,

(b) That it does not state whether or not the establishment by said proposed law of the "state" insurance fund would or might impose on the Commonwealth liabilities to an amount in excess of said fund as constituted under said law,

(c) That it does not state that said proposed law would require additional services from existing state officers whose compensation is paid otherwise than from said fund and that it would require said state officers to employ additional employees whose compensation would be so paid, and

(*d*) That it does not state the conditions that would be brought about by said proposed law by reason of its taking effect under the constitution thirty days after the state election in 1942, if approved by the people at said election, coupled with the deferring of the appointment of the trustees of the state insurance fund until February 1, 1943, and the deferring of the establishment of said fund until January 1, 1944.

2. Is said proposed law "in proper form for submission to the people" under said Article XLVIII; and if not, are the defects in form or substance such that it is not legally "introduced and pending" before the General Court?

3. Does said proposed law make "a specific appropriation of money from the treasury of the Commonwealth" within the meaning of said Article XLVIII, so that it is a measure which cannot be proposed by an initiative petition?

4. In view of the provisions of said proposed law relative to the establishment and operation of the state insurance fund and especially

(1) Those provisions requiring additional services in the departments of the state treasurer, of the attorney general and of labor and industries and in the division of insurance, without providing for payment of compensation for such services out of said fund,

(2) The provisions of sections 8A and 8B of chapter 24 of the General Laws, as appearing in section 4 of said proposed law, providing for salaries of the director of said fund, other trustees and deputies or assistants, without providing that such salaries shall be paid out of said fund,

(3) The provisions of sections 8A and 8C of said chapter 24, as appearing in said section 4, requiring that said officers referred to in paragraph (2) shall not be, and that the other officers and employees necessary for the administration of said fund shall be, subject to chapter 31 of the General Laws and the rules and regulations made thereunder,

(4) The provisions in sections 8B and 8C of said chapter 24, as appearing in said section 4, providing that any expenditures made by the director and the appointment of such other officers and employees shall be subject to appropriation, and

(5) The provision in section 53 of said chapter 152, as appearing in section 5 of the proposed law, that the state treasurer shall be the treasurer and custodian of said fund, —

would said fund under said proposed law be an undertaking of the Commonwealth, a private or quasi-public undertaking, or an undertaking partly of the Commonwealth and partly private or quasi-public; and would the establishment and operation of said fund as provided in said proposed law, whichever type of undertaking it is, be constitutional, especially in view of the limitations upon the police power and upon the expenditure of money raised by taxation, under the Constitution of the Commonwealth, the provisions of Article XI of Section I of Chapter II of Part the Second of said Constitution, Section I of Article LXII of the Amendments to said Constitution, Article LXIII of said Amendments?

5. If said state insurance fund would be in whole or in part an undertaking of the Commonwealth, could the Commonwealth constitutionally engage in the business of insuring the payment of the compensation provided for by said chapter 152, as provided in said proposed law, especially in view of the limitations upon the police power and upon the expenditure of money raised by taxation, under the Constitution of the Commonwealth?

6. If under said proposed law said state insurance fund would be in whole or in part a private or quasi-public undertaking, would said proposed law require the expenditure of money raised by taxation in support of such undertaking and would the Constitution of the Commonwealth thereby be violated?

7. Under the provisions of said chapter 152, as amended by said proposed law, more particularly the provisions of

section 66, as amended by the addition of clause 4, would an employer, who had not provided by insurance for the payment of the compensation provided for by said chapter 152, be liable in an action to recover damages for a personal injury suffered by one of his employees in the course of his employment, upon proof thereof, without proof that such injury was the direct result of negligence on the part of the employer; and, if so, would said provisions be constitutional in imposing such liability, especially in view of the limitations on the police power under the Constitution of the Commonwealth, the provisions of Articles I, X and XII of Part the First of said Constitution and Section 1 of Article XIV of the Amendments to the Constitution of the United States?

8. Would the provisions of said chapter 152, as amended by said proposed law, more particularly the provisions contained in that part of section 1 defining the word "insurer" and in sections 62, 66 and 67, constitute "legal compulsion", as that expression is used in the Opinion of the Justices, 209 Mass. 607 at page 611, upon an employer to provide by insurance in the state insurance fund for the payment of the compensation provided for by said chapter; and if so, would said provisions be constitutional, especially in view of the limitations upon the police power under the Constitution of the Commonwealth, the provisions of Articles I, X, XII and XV of Part the First of said Constitution and Section 1 of Article XIV of the Amendments to the Constitution of the United States?

9. Would it be constitutional, especially in view of the limitations upon the police power under the Constitution of the Commonwealth, the provisions of Articles I, X and XII of Part the First of said Constitution and Section 1 of Article XIV of the Amendments to the Constitution of the United States, to require that insurance of the payment of the compensation provided for by said chapter 152, if desired, be obtained only from the state insurance fund, to the exclusion of any insurance company, substantially as is provided by said pro-

posed law, more particularly the provisions amending the definition of "insurer" in section 1 of said chapter, repealing section 52 thereof and inserting section 62 thereof?

10. Would the provisions of said proposed law, excluding existing insurance companies now authorized to insure the payment of the compensation provided for by said chapter 152 from the business of making such insurance, be unconstitutional as depriving them of property without due process of law?

11. Would the provisions of said proposed law requiring employers, who desire to obtain insurance of the payment of the compensation provided for by said chapter 152, to secure such insurance from said state insurance fund only, and to contribute thereto in the form of premiums, assessments or otherwise, be unconstitutional as depriving them of property without due process of law?

12. Would the provisions of said proposed law depriving employers of their present freedom of choice among insurers of the compensation provided for by said chapter 152 be constitutional?

13. If any provisions of said proposed law are unconstitutional, are such provisions separable so that the other provisions thereof are not affected by such unconstitutionality?

On May 20, 1941, the Justices returned the following answers, which were read in the respective bodies on that day:

To the Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House of Representatives on March 6, 1941, and by the Senate on March 12, 1941, and transmitted to the Justices on March 17, 1941. A copy of the order is hereto annexed.

The questions submitted relate — in the language of the order — to a "document (printed as House, No. 2034), purporting to be an initiative petition for a proposed law

under Article XLVIII of the Amendments to the Constitution of the Commonwealth and containing the text of the proposed law under the title 'An Act providing for a State Fund for Workmen's Compensation' and a 'Description' determined by the Attorney General under said Article XLVIII and required thereby to be printed at the top of each blank for the use of signers of the petition and also upon the ballot in the event of submission of the proposed law to the people." This "document" has been transmitted by the Secretary of the Commonwealth to the clerk of the House of Representatives. A "copy of said document and one of said blanks" accompany the order.

The questions of law submitted for our opinions are in general of two classes: (a) those bearing upon the question whether the law proposed by initiative petition is "introduced and pending," within the meaning of said art. 48 of the Amendments, for action thereon by the General Court in the manner prescribed by said article, and (b) those bearing upon the constitutionality of the proposed law.

The procedure to be followed in the case of an initiative petition, as prescribed by art. 48 of the Amendments, is in outline (a) the signing by ten qualified voters of such a petition setting forth "the full text of the . . . law . . . which is proposed by the petition"; (b) the submission of such petition to the Attorney General for his certification "that the measure is in proper form for submission to the people," and to certain other facts; (c) the filing of such petition with the Secretary of the Commonwealth, who "shall provide blanks for the use of subsequent signers, and shall print at the top of each blank a description of the proposed measure as such description will appear on the ballot together with the names and residences of the first ten signers"; (d) the transmission of such petition, "signed by not less than twenty thousand qualified voters," "to the clerk of the house of representatives," and "the proposed measure shall then be deemed to be introduced and pending"; (e) a vote thereon "taken by yeas and nays in both houses," and (f) if "the general court fails to enact such law" the completion of such petition by filing with

the Secretary "not less than five thousand signatures of qualified voters, in addition to those signing such initiative petition"; and (g) the submission of "such proposed law to the people at the next state election."

The proposed law — except for a provision saving existing remedies for rights accrued prior to the going into effect of the proposed law, and for a provision that if "any provision of this act or the application thereof to any person or circumstance is held unconstitutional or otherwise invalid, the remaining provisions of the act and the application of such provisions to other persons or circumstances shall not be affected thereby" — is in the form of amendments to G. L. c. 24, entitled "Department of Industrial Accidents," and to G. L. c. 152, entitled "Workmen's Compensation." The primary purpose of the proposed law is to provide for the creation, on January 1, 1944, of "a fund to be known as the 'state insurance fund', for the purpose of insuring employers against liability for personal injuries, occupational disease, or death sustained by their employees and of assuring to the persons entitled thereto the compensation and benefits provided" by said c. 152, and to limit the definition of the word "Insurer" in said c. 152 to the "state insurance fund" so created, though the proposed law, if it should become law, would also change the law relating to workmen's compensation in other material respects.

The proposed law would create a fund to be known as the "state insurance fund" to provide for workmen's compensation, to be administered by a board of trustees, one of whom shall be the "state fund director," within the department of industrial accidents, appointed by the Governor with the advice and consent of the Council, with salaries fixed by such law. The director is authorized to appoint, "with the approval of a majority of the other trustees and with the approval of the Governor, . . . deputies or assistants in such number, not exceeding five, as may be determined by the Governor." They are not to be subject to the civil service laws and rules. They may be removed by the director for cause, subject to the approval of a majority of

the trustees. Each of them is to receive such salary, not exceeding a fixed amount, as is fixed by the director with the approval of the Governor. "Subject to appropriation, the director may appoint and employ all officers, accountants, clerks, secretaries, agents, investigators, auditors and other officers and employees, necessary for the proper administration of the state insurance fund," subject to the civil service law and rules, and to other specific requirements.

The "state treasurer shall be, ex officio, the treasurer and custodian of the state insurance fund; and all disbursements therefrom shall be paid by him upon vouchers duly drawn as the board of trustees shall prescribe." He is to "give a separate and additional bond, conditioned on the faithful performance of his duties as treasurer and custodian of the fund, in an amount recommended by the board of trustees and approved by the governor and council and with surety or sureties satisfactory to the attorney general." This bond is to be deposited with the State Secretary, and the premium is to be paid from "the state insurance fund administration account."

The Attorney General is directed to conduct legal proceedings relating to the State insurance fund. Actions for the collection of unpaid premiums are to be brought in the name of the Commonwealth. And certain duties or powers in connection with the fund are imposed upon the commissioner of insurance, the department of industrial accidents and the department of labor and industries.

The "expense of administering the state insurance fund shall be paid out of such fund," but in no case "shall the amount of such expenditures for an entire year exceed twenty-five per centum of the earned premiums of that year." The expenses of the trustees "incurred in connection with their duties" are to be "paid out of the state fund on the warrant of the state fund director," and the director "may make any expenditures, subject to appropriations, . . . necessary and suitable to administer the said fund."

The "state insurance fund" is to "consist of all premiums received and paid into the fund, of property and securities

acquired by and through the use of monies belonging to the fund and of interest earned upon monies belonging to the fund and deposited or invested" as provided in the proposed law, "and subject to appropriation by the legislature, monies that prior to the going into effect of the state fund were held in a special fund in the custody of the state treasurer under section sixty-five of chapter one hundred and fifty-two of the General Laws." (It is to be observed that the transfer of the special fund is expressly subject to appropriation by the Legislature and the propriety of such a transfer is not involved in any of the questions submitted. Obviously such a transfer would be merely incidental to the general purpose of the proposed law.)

If the law proposed by the initiative petition referred to in the order does not relate to an excluded matter — that is, a matter of such a nature that a law relating thereto cannot, under art. 48 of the Amendments, The Initiative, II, § 2, "be proposed by an initiative petition" — and the preceding steps have been taken, in accordance with the requirements of art. 48 of the Amendments, this initiative petition, having been transmitted to the clerk of the House of Representatives, is to be "deemed to be introduced and pending" for action thereon by the General Court in the manner prescribed by said article. This is true whether or not the proposed law is constitutional in every respect. "There is no provision in the Constitution that a petition accompanied by a proposed bill shall not be presented to and received and considered by the General Court unless constitutional in every aspect. There is nothing in art. 48 of the Amendments altering or limiting with respect to it this general constitutional practice. . . . Jurisdiction is vested in the legislative department of government to consider the constitutionality as well as all other features of measures 'introduced into the General Court by initiative petition.'" *Horton* v. *Attorney General*, 269 Mass. 503, 514–515. The questions of law submitted for an opinion, so far as they bear upon the question whether the law proposed by the initiative petition is "introduced and pending," relate to "pending matters, in order that assistance may

be gained in the performance of present duties" (*Opinion of the Justices*, 216 Mass. 605; 308 Mass. 619, 622), since it is the constitutional duty of the General Court to take a vote on the proposed law if, and only if, it is "introduced and pending." See *Opinion of the Justices*, 271 Mass. 582; 294 Mass. 607; 297 Mass. 577; 297 Mass. 582; 300 Mass. 602. But even if the proposed law is "introduced and pending" the General Court is not thereby relieved of its duty to consider the constitutionality of such law in determining whether to vote for or against its enactment, or to pass a resolution submitting to the people a substitute for the law "introduced by initiative petition . . . to be designated on the ballot as the legislative substitute for such an initiative measure and to be grouped with it as an alternative therefor." See art. 48 of the Amendments, The Initiative, III, § 2; V, § 1. The questions of law submitted for an opinion, so far as they bear upon the constitutionality of the proposed law, therefore, also relate to "pending matters, in order that assistance may be gained in the performance of present duties." See *Opinion of the Justices*, 271 Mass. 582; 297 Mass. 582; 300 Mass. 602. We proceed to consider both classes of questions.

The nature of the proposed law is involved to some extent in both classes of questions. As above outlined, the proposed law is in some particulars susceptible of different interpretations. But it is not our function to interpret the proposed law except so far as interpretation is required in answering the questions submitted. *Opinion of the Justices*, 308 Mass. 601, 607. It is clear, however, that such law would not create a private corporation. *Opinion of the Justices*, 271 Mass. 582, 592–593. Compare *Opinion of the Justices*, 261 Mass. 523, 530; *Horton* v. *Attorney General*, 269 Mass. 503, 512. Indeed, we are of opinion that said law would not create a corporation of any kind, but, rather, would create a governmental instrumentality — the board of trustees of the State insurance fund — within one of the twenty departments — the department of industrial accidents — in which the executive and administrative work of the Common-

wealth is organized, as required by art. 66 of the Amendments. Some of the provisions of the proposed law are like those contained in the proposed law considered in *Opinion of the Justices*, 271 Mass. 582, where it was said that the "Fund" to be established by such law would not be "a public corporation in the sense that it is established as an instrumentality of government." Page 593. But there are other features of the proposed State insurance fund not present in the "Fund" there considered that disclose a clear intention that the fund now proposed — or more accurately its board of trustees — should constitute an instrumentality of the government of the Commonwealth, particularly its inclusion in one of the executive and administrative departments of the Commonwealth, and the bringing of subordinate officers and employees within the civil service law and rules. The board of trustees in its nature resembles the unemployment compensation commission involved in the case of *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275. On this interpretation of the proposed law the trustees, including the director, being public officers appointed by the Governor with the advice and consent of the Council could, under G. L. (Ter. Ed.) c. 30, § 9, be removed in like manner. Compare *Opinion of the Justices*, 271 Mass. 582, 592–593. All the questions submitted are answered on this footing.

The proposed law, though transmitted by the Secretary of the Commonwealth to the clerk of the House of Representatives, is not "introduced and pending" for action thereon by the General Court within the meaning of the Constitution if it relates to an "excluded matter." See *Opinion of the Justices*, 294 Mass. 607; 297 Mass. 577. Article 48 of the Amendments, The Initiative, II, § 2, lists certain "Excluded Matters," and provides among other things that no measure "that makes a specific appropriation of money from the treasury of the commonwealth, shall be proposed by an initiative petition; but if a law approved by the people is not repealed, the general court shall raise by taxation or otherwise and shall appropriate such money

as may be necessary to carry such law into effect." (Compare the somewhat different provision relating to referendum petitions. Art. 48 of the Amendments, The Referendum, III, § 2.)

The third question submitted is whether the proposed law makes such "a specific appropriation of money from the treasury of the Commonwealth." Article 63 of the Amendments, § 1, provides that "All money received on account of the commonwealth from any source whatsoever shall be paid into the treasury thereof." And authorization for payments out of the treasury "must, at least ordinarily, be given by statutes making appropriations therefor," though a statute may be construed as making an appropriation even if no form of the word "appropriate" is used therein. *Opinion of the Justices*, 300 Mass. 630, 636. See also *Opinion of the Justices*, 297 Mass. 577, 580–581; 302 Mass. 605, 612–613; 308 Mass. 601, 614; Constitution, Part II, c. 1, § 1, art. 4; Part II, c. 2, § 1, art. 11. Yet it is apparent from the immediate context of the prohibition in said art. 48, The Initiative, II, § 2, that the mere fact that a law will require the appropriation of money from the treasury of the Commonwealth to carry it into effect does not, of itself, bring such law within the scope of the prohibition. As was pointed out in *Opinion of the Justices*, 271 Mass. 582, 597, a "general and indefinite burden imposed upon the public treasury is wholly variant from a 'specific appropriation,' forbidden" by the constitutional provision.

The proposed law does not contemplate that the expenditure of any revenue of the Commonwealth derived directly or indirectly from taxation shall be used for its purposes without further appropriation. And it nowhere provides for payment into the State insurance fund of money raised by taxation. It contemplates that compensation benefits, the payment of which is the primary purpose of such law, shall be paid out of the fund, and that this fund shall consist of premiums paid by employers for workmen's compensation insurance, with accretions thereto, and possibly a special fund, not raised by taxation, transferred thereto by

appropriation. Moreover the proposed law provides that the "expense of administering the state insurance fund shall be paid out of such fund." It is a possible interpretation of the proposed law that the additional expenses of the treasurer and other officers of the Commonwealth not constituting a part of the governmental instrumentality to be created by the proposed law are not to be included in the expense to be paid out of the fund, and that the salaries of the director and the other trustees are not to be so included. But on this interpretation of the proposed law, there is no specific provision in the law for such payments that goes beyond imposing a "general and indefinite burden" on the public treasury resulting from carrying such law into effect. No "specific appropriation" from such treasury is made for this purpose. See *Opinion of the Justices*, 271 Mass. 582, 589. On the natural interpretation of the proposed law, however, the "expenditures" made by the director "to administer the said fund," and the salaries and wages of subordinate officers and employees, appointed or employed by the director, as expressly authorized by said law, in each instance, "subject to appropriations" are included in the expense to be paid out of the fund. No "specific appropriation," however, for such payments is made. It is left for the General Court to determine, in carrying into effect the proposed law, what amounts shall be so paid, except as the maximum amount to be paid from the fund for expense is fixed thereby.

The important question, therefore, is whether the proposed law, by setting up the State insurance fund for the particular purpose of paying workmen's compensation benefits and the expense of administering the fund, makes "a specific appropriation of money from the treasury of the commonwealth" for these purposes within the meaning of the constitutional prohibition. Of course, if, under the proposed law, the fund is not to be in the treasury, no such "specific appropriation" is made by the law. See *Horton* v. *Attorney General*, 269 Mass. 503, 511–512. But, in our opinion, the fund, according to this law, is to be in the treasury. It is provided by the law that the "state treas-

urer shall be, ex officio, the treasurer and custodian of the state insurance fund" — language similar to that used in the proposed law considered in *Horton* v. *Attorney General,* 269 Mass. 503, where the State treasurer was treated as the "treasurer of a *quasi* public corporation receiving and disbursing funds which do not belong to the Commonwealth." Page 512. However — unlike the situation in *Horton* v. *Attorney General,* 269 Mass. 503 — the fund here in question is to be administered by an instrumentality of the Commonwealth, and certain payments for expenses that are to be made out of such fund are, in express terms, "subject to appropriation," importing payment out of the State treasury. Since the premiums received from employers and the accretions thereto are received by a governmental instrumentality, they are "received on account of the commonwealth," within the meaning of art. 63 of the Amendments, requiring all such money "from any source whatsoever" to be "paid into the treasury thereof." This court so held in *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, with respect to contributions received from employers and employees under the unemployment compensation law, although recognizing that such contributions were "not a part of the general revenue of the Commonwealth" and were "raised by the Commonwealth for a particular purpose through the exercise of the police power." Page 289. The unemployment compensation law, thus construed, contained a provision with reference to the State treasurer like that above quoted from the proposed law. See G. L. (Ter. Ed.) c. 151A, § 11; St. 1935, c. 479, § 5, subsection 11. Since, however, the unemployment compensation law was not proposed by an initiative petition no question arose whether it made a "specific appropriation" within the meaning of art. 48 of the Amendments.

The proposed law, read in connection with the statutes to be amended by it, provides for payment out of the State insurance fund thereby created of compensation according to a fixed schedule of amounts, in part based on the weekly wages of the employees to whom, or to whose legal repre-

sentatives or dependents, such compensation is to be paid. G. L. (Ter. Ed.) c. 152, §§ 26–40. Such payments of compensation are to be made from a fund established for this particular purpose, and also for paying the expense of administering the fund, for creating a "catastrophe surplus" and for setting up and maintaining reserves "adequate to meet anticipated losses and to carry all claims and policies to maturity," by the payment into such fund of premiums by employers and accretions thereto. These amounts are not a part of the general revenue of the Commonwealth, though paid into the State treasury. See *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 289.

And as was said, in the case just cited, with respect to so called "contributions" by employers and employees for the purpose of creating a fund for paying unemployment compensation benefits under the unemployment compensation law, the premiums paid into the State insurance fund "cannot rightly and in good conscience be diverted to any other purpose" than the payment of workmen's compensation benefits, the payment of expense of administering the fund, the creating of a "catastrophe surplus" and the setting up and maintaining of adequate reserves. And the proposed law contemplates that expense of administering the fund shall be paid therefrom only upon appropriation for that purpose. It is a reasonable interpretation of the proposed law that further appropriation also shall be required for the payment of workmen's compensation benefits from the fund so that the proposed law does not make a "specific appropriation of money" from the treasury of the Commonwealth, but is subject to the further provision of art. 48 of the Amendments, The Initiative, II, § 2, that if the law is not repealed "the general court shall raise by taxation · or otherwise and shall appropriate such money as may be necessary to carry such law into effect." See *State ex rel. Shuff* v. *Clausen,* 131 Wash. 119; *Mason–Walsh– Atkinson–Kier Co.* v. *Department of Labor & Industries,* 5 Wash. (2d) 508, 516–518.

The somewhat detailed schedule of compensation bene-

fits fixed by the proposed law does not preclude this conclusion. A provision, for example, fixing the salary of a public officer is not an appropriation of that amount for the payment of such salary. And it is provided by art. 63, § 2, of the Amendments, that the budget recommended by the Governor upon which the general appropriation bill is based "shall contain a statement of all proposed expenditures of the commonwealth for the fiscal year, including those already authorized by law." In *Opinion of the Justices*, 297 Mass. 577, 580–581, it was stated with respect to a constitutional amendment proposed by an initiative petition, that the "general supervision of ways and means for the needs of the Commonwealth was reserved to the General Court," that in general "the aim of this article was to prevent resort to the initiative in order to segregate public moneys or a part of the public revenue to any narrow purpose," and that permanently "to lay hold of and appropriate to a single public use all the revenue derived from one source of taxation . . . is a 'specific appropriation' within that prohibition." The proposed law dealing with premiums paid into the State treasury by employers for the particular purpose of paying workmen's compensation benefits to their employees would not have this effect and would not conflict with the purpose of reserving the "general supervision of ways and means . . . to the General Court."

In our opinion the answer to the third question submitted is "No."

The proposed law, though transmitted by the Secretary of the Commonwealth to the clerk of the House of Representatives, is not "introduced and pending" for action thereon by the General Court within the meaning of the Constitution if the description thereof does not meet the requirements of art. 48. The first question submitted is whether the description of the proposed law meets the requirement of the article in view of certain considerations set forth in the order.

The governing principles are stated in *Opinion of the Justices*, 271 Mass. 582, 588–589, as follows: "The words

of said art. 48 on this point are in 'General Provisions,'
Part III, that such proposed law 'shall be described on the
ballots by a description to be determined by the attorney-
general,' and in 'The Initiative,' Part II, § 3, that the Sec-
retary of the Commonwealth 'shall provide blanks for the
use of subsequent signers [after the first ten], and shall
print at the top of each blank a description of the proposed
measure as such description will appear on the ballot,' and
in 'General Provisions,' Part III, that the 'secretary of the
commonwealth shall . . . cause such question . . . to be
printed on the ballot . . . In the case of a law: Shall a
law (here insert description . . .) be approved?' In said
art. 48 there is no definition of the word 'description.' The
debates of the Constitutional Convention which framed
said art. 48 do not disclose any definition. Those debates
indicate that the duty of preparing the description was cast
upon the Attorney General to the end that one learned in
the law and under a high official responsibility should draft
that description. It would seem to be rational to infer that
the purpose of the requirement that a description of the
proposed law be printed on the initiative petition blanks,
provided by the Secretary of the Commonwealth to be
signed by the requisite twenty thousand qualified voters,
is that such signers may have before their eyes and in their
minds when deciding whether to sign the petition an im-
partial statement of the dominant and essential provisions
of the proposed law so that thereby they may obtain an
accurate conception of its main characteristics. It may
also be inferred that the reason for requiring the printing
on the ballot of the same description is that the voter may
have at hand some means for making up his mind whether
to vote to approve or to disapprove the proposed law.
Under 'General Provisions,' Part IV, the full text of each
measure to be submitted, together with other information,
must be sent to each voter. Nevertheless, the description
must be printed on the ballot. 'Description' in these cir-
cumstances signifies a fair portrayal of the chief features of
the proposed law in words of plain meaning, so that it can
be understood by the persons entitled to vote. It must be

complete enough to convey an intelligible idea of the scope and import of the proposed law. It ought not to be clouded by undue detail, nor yet so abbreviated as not to be readily comprehensible. It ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy. It must contain no partizan coloring. It must in every particular be fair to the voter to the end that intelligent and enlightened judgment may be exercised by the ordinary person in deciding how to mark the ballot. The provisions of said art. 48 touching the description are mandatory and not simply directory. They are highly important. There must be compliance with them. *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 99." See *Opinion of the Justices*, 297 Mass. 582, 587.

The description of the proposed law covers about nine pages of House Document No. 2034. The first consideration suggested by the order as affecting the question whether the description meets the constitutional requirements is stated as follows: that it "states erroneously in its first paragraph that under said proposed law the state insurance fund would not be empowered to insure an employer against liability on account of personal injury, occupational disease or death of domestic servants or farm laborers employed by him." The statement in the description so referred to is that the "measure . . . provides for the creation . . . of a state insurance fund to insure employers against liability on account of personal injury, occupational disease or death of employees other than domestic servants or farm laborers."

This part of the description is a statement of the general purpose of the creation of the fund. It is an accurate statement unless it is rendered inaccurate by the implied exclusion, from the application of the proposed law, of "domestic servants" and "farm laborers." Such employees, as under the present law, are not absolutely excluded from the application of the proposed law. See *Stone's Case*, 290 Mass. 530. But they are included under conditions materially different from those applicable to other employees. The prohibition in the proposed law against an employer's insuring "in any insurer other than the state fund" "against

liability on account of injury or death of an employee" is not applicable to domestic servants or farm laborers. And an employer who does not insure in the State insurance fund against liability on account of injury or death of a domestic servant or farm laborer is not for that reason deprived of his common law defences as in the case of other employees. See G. L. (Ter. Ed.) c. 152, § 67. The situation of a domestic servant or a farm laborer in this respect was substantially the same under the original workmen's compensation act. Yet it was said of that act in *Keaney's Case*, 217 Mass. 5, 7 — involving the employee of a farmer — that the act "was not intended to confer its advantages upon farm laborers, or to impose its burdens upon farmers." See also *Young* v. *Duncan*, 218 Mass. 346, 349. It might reasonably be thought that the statement of general purpose would be made more nearly accurate and less likely to mislead by excluding from such statement domestic servants and farm laborers than by impliedly including them therein under the same conditions as other employees. And a complete statement of the effect of the proposed law in this respect would require a statement of the exceptional conditions under which it would apply to domestic servants and farm laborers. Such a statement would involve some detail, and undue detail in a description is to be avoided. It is idle to speculate as to the effect of the description in this form upon the voters as compared with a description stating the exceptional conditions under which the proposed law would apply to domestic servants and farm laborers. We are of opinion, however, that the description in this particular cannot rightly be said to fall so far short of stating the main characteristics of the proposed law as to invalidate the petition. Notwithstanding the mandatory provisions of the Constitution requiring a description from which persons signing the petition and persons voting on the proposed law "may obtain an accurate conception of . . . [the] main characteristics" of the proposed law, the Constitution is not to be so interpreted as to place the rights of petitioners at the risk of a slight deviation from technical exactness in the language of the description as determined by the Attorney General. De-

scriptions that have failed to meet the constitutional requirements have been open to more serious objections than is the description here considered. See *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 98, 99; *Opinion of the Justices*, 271 Mass. 582, 589–592; 297 Mass. 582, 587–588; *Evans* v. *Secretary of the Commonwealth*, 306 Mass. 296.

Moreover, in our opinion, the description is not vitiated by reason of any of the other considerations referred to in the order. There are statements in the definition that additional services will be required of particular officers of the Commonwealth not within the instrumentality of government to be created by the proposed law. In this respect it differs from the definition considered in *Opinion of the Justices*, 271 Mass. 582, 586–587, 590–591. And an interpretation of the effect of the proposed law in operation such as is involved in these considerations is not required in the description. See *Opinion of the Justices*, 297 Mass. 582, 588. We think that with respect to these considerations the description is sufficient.

We answer the first question submitted "Yes."

In view of the conclusions reached upon the questions previously considered we find no "defects in form or substance such that . . . [the proposed law] is not legally 'introduced and pending' before the General Court." In our opinion it is "in proper form for submission to the people" within the meaning of art. 48, The Initiative, II, § 3.

We answer the second question submitted "Yes."

The remaining questions submitted relate to the constitutionality of the proposed law as a matter of substance, and not of procedure in submitting it for approval. The "limitations on the legislative power of the general court in the constitution . . . extend to the legislative power of the people as exercised" upon an initiative petition. Art. 48, The Initiative, II, § 2.

As already stated, the proposed State insurance fund — or more accurately the board of trustees thereof — would be an instrumentality of the government of the Commonwealth — it would be an "undertaking of the Commonwealth." The provisions of the proposed law

referred to in the fourth question submitted relate to the duties of officers of the Commonwealth outside the instrumentality, to the appointment and employment of officers and employees within the instrumentality, and to the payment of salaries and the making of expenditures, in some instances subject to appropriation, and in some instances, possibly, without provision for payment out of the fund. The provisions of the proposed law in these respects have already been stated. They support the conclusion that the fund would be an instrumentality of government. But the proposed law does not contemplate the use of money from the general revenue of the Commonwealth raised by taxation for the payment of workmen's compensation benefits. It may be, however, that some expense of administering the fund would be cast upon such revenue. The fourth question submitted is to be answered upon this footing and, so considered, is whether "the establishment and operation of said fund as provided in said proposed law . . . [would] be constitutional, especially in view of the limitations upon the police power and upon the expenditure of money raised by taxation, under the Constitution of the Commonwealth, the provisions of Article XI of Section I of Chapter II of Part the Second of said Constitution, Section I of Article LXII of the Amendments to said Constitution, Article LXIII of said Amendments."

We are of opinion that the establishment and operation of the fund, considered as an instrumentality of government, and imposing no burden upon the revenue of the Commonwealth, beyond some possible expense of administration, would be constitutional as an exercise of the police power. The purpose of administering such a fund paid into the State treasury by employers, as premiums for workmen's compensation insurance, for the payment of workmen's compensation benefits is a public purpose. With some modifications it is the same purpose as that of the present workmen's compensation law — the constitutionality of which as an exercise of the police power is settled, *Young* v. *Duncan*, 218 Mass. 346, 351–354;

*Madden's Case,* 222 Mass. 487, 497–498; *Ahmed's Case,* 278 Mass. 180, 183–184; *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 284 — though this purpose is to be carried out by a somewhat different method. This method, however, closely resembles the method prescribed by the unemployment compensation law, under which a fund, consisting of contributions of employers and employees, is administered by an instrumentality of the government of the Commonwealth for the purpose of paying unemployment compensation benefits. This law was held constitutional in *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, the court there citing decisions relating to workmen's compensation acts, and saying that in "reason it is difficult to distinguish these decisions from the cases at bar." Page 284. See also *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 234. In the light of these decisions the operation and establishment of a State insurance fund to be administered by an instrumentality of the government of the Commonwealth is not beyond the scope of the police power and does not involve the expenditure of public money for anything other than a public purpose (see *Opinion of the Justices,* 261 Mass. 523, 541–542, and cases cited) in violation of the Constitution of the Commonwealth.

Even if the proposed law could be regarded as in any manner giving or lending the credit of the Commonwealth — as we do not imply — it would not conflict with the provision of art. 62, § 1, of the Amendments, that such credit "shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed." See *Opinion of the Justices,* 261 Mass. 523, 542–545. Nor, for reasons already stated, would the proposed law conflict with the requirement of art. 63, § 1, of the Amendments, that "All money received on account of the commonwealth from any source whatsoever shall be paid into the treasury thereof." Furthermore, we see nothing in the proposed law that precludes compliance with the provision of Part II, c. 2, § 1, art. 11, of the Constitution, requiring a war-

rant of the Governor and Council for the issuing of moneys out of the treasury.

We answer the fourth question submitted "Yes" on the basis that the State insurance fund under the proposed law would "be an undertaking of the Commonwealth."

The fifth question submitted is answered in substance by what has been said in answer to the fourth question. The Commonwealth, in administering the State insurance fund through a governmental instrumentality, will not "engage in the business of insuring the payment of the compensation provided for by said chapter 152," dealing with workmen's compensation, as a commercial venture. The fund, as already pointed out, is to be administered for a public purpose. And the mere fact that its administration for such a purpose is to be conducted in a manner somewhat similar to that in which the business of workmen's compensation insurance is carried on for profit by private corporations will not render such administration unconstitutional. See *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 413–414; affirmed, 260 U. S. 309; *Allydonn Realty Corp.* v. *Holyoke Housing Authority,* 304 Mass. 288, 292–297. See also *Osborn* v. *Ozlin,* 310 U. S. 53, 66.

We answer the fifth question submitted "Yes."

In view of the conclusion reached as to the nature of the "undertaking" under the proposed law, it seems to be unnecessary to answer the sixth question submitted.

The seventh and eighth questions relate to the effect of certain changes that would be made in the workmen's compensation law now in force by the proposed law upon the rights and duties of employers and to the constitutionality of such changes. The workmen's compensation law of this Commonwealth has always been treated as optional as to all parties — employees, employers and insurers. In *Ahmed's Case,* 278 Mass. 180, 183, it was said that the "workmen's compensation act of this Commonwealth (G. L. c. 152 as amended) is an elective compensation insurance law. It is compulsory upon nobody. Both the employer and the employee must elect to be bound by its terms before it is operative upon either. It is entirely optional with any in-

surance company whether it shall insure an employer."
But though the act was "not made compulsory in its appli-
cation . . . inducements were held out to facilitate its vol-
untary acceptance by both employers and employees."
*Young* v. *Duncan*, 218 Mass. 346, 349.

One inducement to employers to insure under the law is
that they are thereby relieved from their common law lia-
bility for "personal injuries" sustained by employees not
reserving their common law rights. G. L. (Ter. Ed.) c. 152,
§ 24. Another inducement is the provision of G. L. (Ter.
Ed.) c. 152, § 66 (first enacted as St. 1911, c. 751, Part I,
§ 1), that "In an action to recover damages for personal
injury sustained by an employee in the course of his
employment, or for death resulting from personal injury
so sustained, it shall not be a defence — 1. That the em-
ployee was negligent; 2. That the injury was caused by
the negligence of a fellow employee; 3. That the employee
had assumed the risk of the injury," subject to the limita-
tion, among others, that this provision "shall not apply to
. . . actions for such injuries received by employees of an
insured person." G. L. (Ter. Ed.) c. 152, § 67.

With respect to the nature, purpose and interpretation of
the workmen's compensation law it was said in *Greem* v.
*Cohen*, 298 Mass. 439, 443–444: "The workmen's compen-
sation act was new legislation having a procedure all its
own. It established in instances to which it was applicable,
in place of the common law or statutory remedy for personal
injury, based upon tort, a system whereby compensation
for all personal injuries or death of the employee should be
determined by a public board. . . . The workmen's com-
pensation act was passed in response to strong public sen-
timent that the remedies afforded by actions of tort at
common law and under the employers' liability act were in-
adequate. *Young* v. *Duncan,* 218 Mass. 346, 349. While the
workmen's compensation act did not compel employers to
come under the new scheme of compensation, it manifested
the purpose in its first section, now G. L. (Ter. Ed.) c. 152,
§ 66, to leave nonsubscribing employers in such a disad-
vantageous position that hardly any employer could afford

not to accept the insurance provisions of the act. *Young* v. *Duncan*, 218 Mass. 346. *Cox's Case*, 225 Mass. 220, 223. The act 'disclosed a legislative aim to secure its wide adoption and use.' *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418, 421. The first section was vital to the success of the whole plan of the statute. Without the diminishment of the rights of defendant employers and the enlargement of the rights of plaintiff employees in actions at law, effected by the first section, a very limited number of employers would be likely to become insured under the act. 'The interpretation of the act has been and ought to be, so far as reasonably practicable, to promote the accomplishment of its beneficent design.' *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418, 421." And in *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 569, it was said that the "Legislature intended indeed to make it difficult for either employer or employee to escape from the system of personal injury insurance provided by the act." See also *Aleck's Case*, 301 Mass. 403, 406.

Notwithstanding the strong inducements of the workmen's compensation law for an employer to insure thereunder, that law, when assailed as unconstitutional, has been sustained on the basis that it is optional and not compulsory. See *Young* v. *Duncan*, 218 Mass 346, 351; *Madden's Case*, 222 Mass. 487, 497–498; *Fountaine's Case*, 246 Mass. 513, 515; *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418; *Ahmed's Case*, 278 Mass. 180. See also *Opinion of the Justices*, 209 Mass. 607. But the court has never decided that a compulsory workmen's compensation law would be unconstitutional. Reference to this subject, however, was made in *Opinion of the Justices*, 251 Mass. 569, 598–599, relating to a proposed law for compulsory motor vehicle insurance, in these words: "There are several States in the Union where workmen's compensation acts are compulsory instead of optional. Under those statutes the payment of compensation to the injured employee is secured in whole or in part by provisions for compulsory insurance by the employer. Such statutes have been upheld as not violative of the Constitution of the United

States. *New York Central Railroad* v. *White*, 243 U. S. 188. *Hawkins* v. *Bleakly*, 243 U. S. 210. *Mountain Timber Co.* v. *Washington*, 243 U. S. 219. *Middleton* v. *Texas Power & Light Co.* 249 U. S. 152. Such a requirement for insurance by employers as security for personal injury to their employees seems to us a greater stretch of legislative power than is contemplated by the proposed bill." However, in an *Opinion of the Justices, ante,* 562, rendered this day, we have expressed the opinion that the compulsory features of certain pending bills relating to workmen's compensation insurance do not render these bills violative of the Constitution of the Commonwealth.

The proposed law while not expressed in terms of compulsion would add a further inducement to an employer to insure under the workmen's compensation law resulting from the amendment to G. L. c. 152, § 66, by the addition thereto of clause 4, whereby a noninsuring employer would be deprived of another so called "defence" in "an action to recover damages for personal injury sustained by an employee in the course of his employment, or for death resulting from personal injury so sustained," namely, the "defence" "That the employee's injury was not a direct result of any negligence on the part of the employer." While these words do not describe a "defence" in the technical sense, yet similar language has been treated in decided cases as describing a "defence." Thus in *Ray* v. *Western Union Telegraph Co.* 258 Mass. 303, 305, it was said that as "the defendant was not insured under the workmen's compensation act, the only defence open to it is that there was no evidence of its negligence." And in *Cronan* v. *Armitage,* 285 Mass. 520, 524, it was said that the "only defence open to him [the defendant, a noninsuring employer] was that his negligence did not cause the injuries of the plaintiff." It was, however, explained in *Greem* v. *Cohen,* 298 Mass. 439, 444, that in "effect there is no difference between saying that the only defence open to a defendant is that there was no evidence of his negligence, and in saying that the only question is whether there is evidence of the negligence of the defendant," which, of

course, imports negligence that is a cause of the plaintiff's injury. See *McGonigle* v. *O'Neill*, 240 Mass. 262, 263; *Hutchinson* v. *Sovrensky*, 267 Mass. 5, 6. There was a like use of the word "defense" in said § 66, when first enacted in St. 1911, c. 751, Part I, § 1, cl. 1, in the provision that it should not be a "defense: 1. That the employee was negligent." At that time, prior to the enactment of St. 1914, c. 553, contributory negligence of a plaintiff was not technically a "defence" to an action for negligence of the defendant; but its opposite, the due care of the plaintiff (here the employee), his freedom from contributory negligence, was an element of the case to be proved by him. *Hilton* v. *Boston*, 171 Mass. 478, 479. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 375. The effect of the language quoted from St. 1911, c. 751, Part I, § 1, cl. 1, was to give to an employee a cause of action without proof of this element of an action for negligence. *Pope* v. *Heywood Brothers & Wakefield Co.* 221 Mass. 143, 144. Similarly the effect of the provision in the same section, clause 2, "That the injury [sustained by the plaintiff] was caused by the negligence of a fellow employee" "shall not be a defense" created a cause of action not otherwise existing at common law or by statute. *Pope* v. *Heywood Brothers & Wakefield Co.* 221 Mass. 143, 144. *Greem* v. *Cohen*, 298 Mass. 439. Compare *Flynn* v. *Salem*, 134 Mass. 351, 352; *Grebenstein* v. *Stone & Webster Engineering Corp.* 205 Mass. 431, 437, *S. C.* 209 Mass. 196, 197; *McKenna* v. *Lynn Gas & Electric Co.* 219 Mass. 208, 209. In the light of these considerations we are of opinion that the addition by the proposed law to G. L. c. 152, § 66, of clause 4, above set forth, must be interpreted as creating a cause of action in an employee sustaining an injury "in the course of his employment" that is a "direct result" of such employment, though not a "direct result of any negligence on the part of the employer." We consider the constitutional questions raised by the seventh and eighth questions submitted on this footing.

It is obvious that the workmen's compensation law as changed by the proposed law would exert more pressure

upon an employer to insure under the workmen's compensation law than is exerted by the existing law. According to the decided cases the pressure exerted by the existing law (apart from G. L. [Ter. Ed.] c. 152, § 54A, the effect of which in this respect has not been passed upon) does not, in the language of *Opinion of the Justices,* 209 Mass. 607, 611, "constitute legal compulsion" so as to render the law compulsory rather than optional on the part of the employers. It is unnecessary to consider whether the alternative to insuring under the workmen's compensation law that will remain to an employer under that law, as changed by the proposed law, will be such that the workmen's compensation law, as so changed, can still be regarded as optional rather than compulsory, except as the distinction affects the constitutionality of the proposed law. See *Answer of the Justices,* 217 Mass. 607, 611; *Opinion of the Justices,* 308 Mass. 601, 607.

Undoubtedly the legislative power of the State extends to the modification, abolition and creation of causes of action so long as fundamental rights are not thereby affected. This principle under the Constitution of the United States was stated in *Silver* v. *Silver,* 280 U. S. 117, 122, as "the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." See also *Wilmington Star Mining Co.* v. *Fulton,* 205 U. S. 60, 74; *Texas & New Orleans Railroad* v. *Miller,* 221 U. S. 408, 415; *New York Central Railroad* v. *White,* 243 U. S. 188, 197–200; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 236; *Arizona Employers' Liability Cases,* 250 U. S. 400, 420, 422. And under the Constitution of the Commonwealth this principle was to some extent recognized in *Opinion of the Justices,* 209 Mass. 607, 610, where it was said that the "rules of law relating to contributory negligence and assumption of the risk and the effect of negligence by a fellow servant were established by the courts, not by the Constitution, and the Legislature may change them or do away with them altogether as defenses (as it has to some extent in the employers' liability act) as in its wisdom in

the exercise of powers entrusted to it by the Constitution it deems will be best for the 'good and welfare of this Commonwealth.' Const. Mass. c. 1, § 1, art. 4."

In some circumstances this principle has been applied, by statutes that have been regarded as constitutional, even to the extent of creating new liabilities irrespective of negligence. See *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 381–382; *Opinion of the Justices*, 251 Mass. 569, 599–600. Of such a statute imposing liability upon railroad corporations for fire communicated by their locomotive engines, it was said in *New England Box Co.* v. *New York Central & Hudson River Railroad*, 210 Mass. 465, 469: "It made but one change, and that was in the ground of liability. That change consisted only in the elimination from that ground of one element, namely, negligence. Before the statute negligence, which was an essential element, the *sine qua non* of liability, must be shown; after the statute negligence no longer became material. This is not a case of an additional remedy for the same cause of action upon the same ground of liability, but a change in the ground of liability." The proposed law by amending G. L. c. 152, § 66, by adding a fourth clause thereto would have a like effect of imposing upon employers, irrespective of their negligence, liability for injuries sustained by their employees not resulting from their "serious and wilful misconduct." G. L. (Ter. Ed.) c. 152, § 27. *Opinion of the Justices*, 209 Mass. 607, 610. The decisions of the United States Supreme Court under the Constitution of the United States have recognized that the imposition of such a liability, in appropriate circumstances, is within the legislative power of a State. See *Arizona Employers' Liability Cases*, 250 U. S. 400, 420–429, 431–432. See also *New York Central Railroad* v. *White*, 243 U. S. 188, 204; *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 236; *Louis Pizitz Dry Goods Co. Inc.* v. *Yeldell*, 274 U. S. 112, 115; *Crowell* v. *Benson*, 285 U. S. 22, 40–41.

We express no opinion as to the constitutionality of imposing such a liability upon employers, irrespective of negligence, in circumstances other than those described

in the proposed law. The obvious purpose of the imposition of such a liability by that law is to exert pressure upon employers to insure under the workmen's compensation law. This court has recognized that the "wide adoption and use" of the workmen's compensation law is a matter of public interest "to promote the accomplishment of its beneficent design." See *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418, 421. In the light of this purpose and of the fact that the proposed law provides a reasonable alternative to the liability imposed by G. L. c. 152, § 66, as amended, through insurance in the State insurance fund, we are of opinion that the imposition of this liability for the purpose of exerting pressure upon employers to insure in that fund will not be in conflict with the provisions of the Constitution of the Commonwealth or of the Constitution of the United States. While the exercise by the proposed law of legislative power to drive employers to insure under the workmen's compensation law goes somewhat beyond that previously exercised, in our opinion it is not an unwarranted exercise of the police power under the Constitution of the Commonwealth in view of the decision in *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, sustaining as constitutional the compulsory unemployment compensation law, or under the Constitution of the United States, in view of the decision in *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, sustaining as constitutional a compulsory workmen's compensation law. See also *Opinion of the Justices* rendered this day, *ante*, 562.

The eighth question submitted refers to Part I, art. 15, of the Constitution of the Commonwealth relating to trial by jury. Under the proposed law the right to a jury trial is not taken away from an insuring employer in an action brought against him by an employee who has reserved his common law rights, nor from a noninsuring employer in an action brought against him by an employee under G. L. c. 152, § 66, as amended by the proposed law. So far as proceedings under the workmen's compensation law are concerned the law "creates rights and remedies and pro-

cedure all its own, not previously known to the common or statutory law," and to parties properly within its terms "it abolishes old legal rights and obligations and creates a new relation with its peculiar statutory incidents." *Ahmed's Case*, 278 Mass. 180, 184.   See also *Greem* v. *Cohen*, 298 Mass. 439, 443.   If "the parties are subject to the act, then all their rights arising under it are to be settled by the agencies there provided and not as in actions at common law."   *Young* v. *Duncan*, 218 Mass. 346, 351. This principle is applicable to the right to trial by jury. Employers insuring under the workmen's compensation law are subject to no liability at common law for personal injuries sustained by employees not reserving their common law rights.   Such employers are not harmed by being relieved from such liability and in our opinion the substitution, in the manner provided by the workmen's compensation law as changed by the proposed law, for the common law liability of employers insuring under that law to employees not reserving their common law rights, of a system of workmen's compensation insurance to be administered in the manner provided by the workmen's compensation law as so changed is not open to constitutional objection on the ground that in such administration there is to be no trial by jury.   With respect to such employers and employees, as was said in *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 235, of a compulsory workmen's compensation law: "As between employee and employer, the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury."

The proposed law would make a further change in the existing workmen's compensation law limiting insurance thereunder to insurance in the State insurance fund, by defining the word "Insurer" used in the law, as amended, as "the state insurance fund created by this chapter" (G. L. c. 152, as amended by the proposed law) and by providing that "Self insurance or insurance in any insurer other than the state fund . . . [with an exception not here material] is hereby prohibited."   Since this fund is to be administered by an instrumentality of government in the exercise of the

police power, it is not arbitrary or unreasonable to provide that this purpose be carried out through the medium of this governmental instrumentality by requiring that workmen's compensation insurance be obtained only from this fund. In our opinion such a requirement would not be unconstitutional. See *Mountain Timber Co.* v. *Washington*, 243 U. S. 219.

We answer the seventh and eighth questions submitted, so far as in the particulars therein referred to they relate to the constitutionality of the proposed law, in the affirmative.

The ninth, tenth, eleventh and twelfth questions submitted are in substance answered by what has already been said. The objections to a monopoly in the business of insurance referred to in *Opinion of the Justices*, 271 Mass. 582, 594–595, are applicable to the "creation . . . of a monopoly in a private or *quasi* public corporation in the field of competitive business." They are inapplicable to an instrumentality of government established in the exercise of the police power, constitutional in other respects, though thereby persons or corporations are driven out of business. Such an exercise of the police power, if in other respects permissible, would not deprive insurance companies — even though existing and authorized under existing law to "insure the payment of the compensation provided for by said chapter 152" — of property without due process of law. Compare *Opinion of the Justices*, 209 Mass. 607, 612. Nor would the prohibition against employers obtaining workmen's compensation insurance in any insurer other than the State insurance fund be unconstitutional on the ground that such employers were thereby deprived of property without due process of law or of their present freedom of choice among insurers. Compare *Mountain Timber Co.* v. *Washington*, 243 U. S. 219.

We answer the ninth question submitted "Yes," the tenth question submitted "No," the eleventh question submitted "No," and the twelfth question submitted "Yes."

We have expressed our opinion upon the specific questions submitted. It is, however, not within the scope of our constitutional function "to examine the validity of every clause, section or part of a complicated statute except in response to specific questions" (*Opinion of the Justices*, 275

Mass. 580, 582, and opinions cited), or to discuss a broad inquiry as to the constitutionality of a proposed law in its entirety. *Opinion of the Justices*, 297 Mass. 559, 566–567. An attempt on our part to answer the thirteenth question submitted — whether if "any provisions of said proposed law are unconstitutional . . . such provisions" are "separable so that the other provisions thereof are not affected by such unconstitutionality" — would conflict with these settled principles,

> FRED T. FIELD.
> CHARLES H. DONAHUE.
> HENRY T. LUMMUS.
> STANLEY E. QUA.
> ARTHUR W. DOLAN.
> JAMES J. RONAN.

To The Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

Perhaps the most important question submitted is the third which asks if the proposed law makes "a specific appropriation of money from the treasury of the Commonwealth" within the meaning of art. 48 of the Amendments to the Constitution so that it is a measure that cannot be proposed by an initiative petition. The answer of the majority to this question is "No." In its lengthy opinion little space is devoted to a statement of the reasons in support of this answer, although, from an examination of the entire opinion, it is not unreasonable to assume that the search for an answer to this question has been made painstakingly and also that all reasons that can be marshalled in support of it have been presented.

What are those reasons? It is pointed out that in some instances the proposed measure provides for the expenditure of a portion of the fund created, "subject to appropriations," and that it is "a reasonable interpretation of the proposed law that further appropriation also shall be required for the payment of workmen's compensation benefits from the fund." In the summary by the majority of

the provisions of the proposed measure, it is pointed out that payment of compensation is to be made according to a fixed schedule of amounts out of the fund that is established for this particular purpose, and that the fund "cannot rightly and in good conscience be diverted to any other purpose" than the payment of compensation benefits, expense of administering the fund, the creation of a surplus and the setting up and maintaining of adequate reserves. It is not stated that the proposed measure is silent as to the necessity of any appropriation for the payment of benefits, the amount of which obviously will constitute the vastly greater part of the fund. Neither is it stated that the expense of administering the fund, which shall not exceed twenty-five per cent of the earned premiums of any year, shall be based upon an estimated budget submitted every three months by the director to the trustees, and that the decision of the board of trustees as to the amount to be expended shall be final. In other words, apart from the specific provisions for appropriations, the amounts of which will be comparatively inconsequential when reference is had to the great sums that will be expended for benefits, the measure is silent as to the requirement of any appropriation by the Legislature to cover these disbursements for compensation, the provisions for the payments of which, to all intents and purposes, are mandatory and self-executing. The conclusion of the majority, that it is a reasonable interpretation of the proposed measure that "further appropriation also shall be required for the payment of workmen's compensation benefits from the fund," is at odds with the general principle or rule, frequently stated by this court, that where, in a statute, an express limitation or proviso is made with reference to a given subject matter, and, in the same statute, no such limitation or proviso is made applicable to a related subject matter, the absence of the limitation or proviso in the second instance is a strong indication that it is not intended to apply, or, by implication, that it is excluded. See *Boston & Albany Railroad* v. *Commonwealth*, 296 Mass. 426, 434.

After the statement as to this "reasonable interpretation"

with the conclusion that the proposed law does not make a "specific appropriation of money," the opinion of the majority states that the measure is subject to the further provision contained in said art. 48, that, if the law is not repealed, "the general court shall raise by taxation or otherwise and shall appropriate such money as may be necessary to carry such law into effect."

The opinion, apart from its categorical answer to the third question, would seem to come down to this: (1) that the proposed measure does not make a specific appropriation; (2) that a further appropriation is required in order to get the fund out of the treasury for the payment of compensation benefits; and (3) that it makes no difference anyway because, if the law is not repealed, the General Court is obligated to appropriate the money out of the fund. The opinion points out that the "general supervision of ways and means for the needs of the Commonwealth" is reserved to the General Court, and the conclusion of the majority fairly presents the question whether the provision of that part of the Amendment to the Constitution now under consideration was intended to constitute the General Court, which "cannot rightly and in good conscience" divert the premiums paid into the fund to any other purpose than for paying compensation benefits, a mere perfunctory body in that it must appropriate the precise amounts that by the proposed measure are definitely allocated to precise and definite purposes.

Perhaps too much emphasis ought not to be placed upon the proceedings in the Constitutional Convention that proposed the resolution to provide for the initiative and the referendum. But the debates in the Convention disclose that there was considerable discussion over the subject of this excluded matter, and it seems that it is not going too far to state that the proponents of the clause, relating to the exclusion from the initiative of a law that made a specific appropriation, advanced the proposition that by its terms it was expected that it should be left to the Legislature to determine what amounts should be expended to carry out an initiated measure.

The question is presented fairly whether under this excluded matter it was intended that, although an initiative measure provides for the payment of specific sums from the treasury of the Commonwealth for specific purposes and for no others, such a measure is constitutional because the language relating to the excluded matter can be construed as requiring the General Court to appropriate those specific sums for those specific purposes. It is not a sufficient answer to this question that the initiative measure, if adopted, may be repealed, or that the General Court may refuse to appropriate such specific sums. It cannot be that the people, by the adoption of the initiative amendment, intended to relegate the General Court, which this court has said still has the general supervision of ways and means for the needs of the Commonwealth, to the status of a body that would, in effect, be required to make use of a rubber stamp in order to validate what otherwise would be an unconstitutional measure.

In the *Opinion of the Justices*, 297 Mass. 577, 580–581, referred to in the opinion of the majority, it was said, with respect to a constitutional amendment proposed by an initiative petition, that in general "the aim of this article was to prevent resort to the initiative in order to segregate public moneys or a part of the public revenue to any narrow purpose." It was said in that opinion that the word "specific" was not to be interpreted in any narrow or restricted sense, and the sentence in which this appears is followed by one in which the word "segregate" is used. The use of the word "segregate" in this connection is not without significance.

The opinion of the majority seems to demonstrate that the greater portion of the fund, if the measure becomes a law, will continue indefinitely to be segregated, but that, in order to avoid any difficulty in this respect, the majority would read into the law a provision not there appearing, that "further appropriation also shall be required for the payment of workmen's compensation benefits from the fund," and, as if this were not enough to justify the answer of "No" to the third question, that the General Court is required to appropriate the money anyway. In other

words, although we have specific funds in the treasury earmarked for specific purposes, and none other, which must be paid out accordingly, this does not constitute a specific appropriation.

It is true that the General Court is required to raise money "by taxation or otherwise" and shall appropriate such money as may be necessary to carry "such [initiative] law into effect." Clearly it cannot raise by taxation the money called for by the proposed measure for the payment of compensation benefits. How can it "raise" that money "otherwise?" According to the measure under consideration, it does not raise it at all. It is already in the treasury without any act whatever on the part of the Legislature. It is a stretch of reasoning to say that the words "raise . . . otherwise" can relate to a fund that the Legislature has had no hand whatever in raising.

But it may be said that the objections that are here raised are of a technical character and should not stand in the way. If a person convicted and sentenced to be electrocuted for the commission of a first degree murder should come before this court, seeking its intervention to prevent him from being shot or hanged by the public authorities in the purported execution of his sentence, perhaps it might be said that his objection was rather technical in that, unless the Executive intervened, he was bound to lose his life anyway, but it would seem that, notwithstanding this, he would be entitled to the protection of the law at the hand of this court. So here, where nothing is involved except the answer to the question submitted, that answer must comprehend within its sweep any constitutional objections, technical or otherwise, to the proposed measure.

In the opinion of the undersigned the answer to the third question is "Yes," and accordingly the answer to the second question is "No." As to the answers of the majority to the remaining questions, the undersigned is in accord.

LOUIS S. COX.